FILED
2025 Apr-09 PM 12:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Northern District of Alabama

Eastern Division

FILED

2025 APR -9 A 11: 42

U.S. DISTRICT COURT
N.D. OF ALABAMA AD

|  |  |  |
|---|---|---|
| Patrick Keith Cullen & Chelsea Kaye Mandeville | ) | Case No. _____ |
| *Plaintiff(s)* | ) | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |  |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |  |
| *please write "see attached" in the space and attach an additional* | ) | Jury Trial: *(check one)* ☒ Yes  ☐ No |
| *page with the full list of names.)* | ) |  |
| -v- | ) |  |
|  | ) |  |
|  | ) |  |
| Lakeland Cemetery Services, Inc. | ) |  |
| Everstory Partners LLC | ) |  |
| Craig E. Haupt (acting in capacity as Plan Administrator) | ) |  |
| *Defendant(s)* |  |  |
| *(Write the full name of each defendant who is being sued. If the* |  |  |
| *names of all the defendants cannot fit in the space above, please* |  |  |
| *write "see attached" in the space and attach an additional page* |  |  |
| *with the full list of names.)* |  |  |

# COMPLAINT FOR A CIVIL CASE

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name            Patrick Keith Cullen & Chelsea Kaye Mandeville

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

| | |
|---|---|
| Street Address | 400 W Blue Mountain Rd |
| City and County | Anniston, Calhoun |
| State and Zip Code | Alabama 36201 |
| Telephone Number | 256-589-2167 & 256-525-5932 |
| E-mail Address | Chayem@yahoo.com / phathacked@proton.me |

**B.** **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | Lakeland Cemetery Services, Inc.  (LCS) |
| Job or Title *(if known)* | N/A (company) |
| Street Address | 1195 Flightway Drive |
| City and County | DePere, Brown |
| State and Zip Code | Wisconsin, 54115 |
| Telephone Number | 920-336-1801 |
| E-mail Address *(if known)* | Craigh.lcs@gmail.com |

Defendant No. 2

| | |
|---|---|
| Name | Craig Haupt |
| Job or Title *(if known)* | Plan Administrator/Vice Pres of LCS |
| Street Address | 2300 Haysacher Ct |
| City and County | Kaukauna, Outagami |
| State and Zip Code | Wisconsin 54130 |
| Telephone Number | 920-901-5813 |
| E-mail Address *(if known)* | craigh.lcs@gmail.com |

Defendant No. 3

| | |
|---|---|
| Name | Everstory Partners LLC |
| Job or Title *(if known)* | N/A (company) |
| Street Address | 955 Keller Rd STE 1500 |
| City and County | Alamonte Springs, Seminole |
| State and Zip Code | Florida, 32714 |
| Telephone Number | 407-379-5700 |
| E-mail Address *(if known)* | N/A (unknown) |

Defendant No. 4

| | |
|---|---|
| Name | N/A |
| Job or Title *(if known)* | N/A |
| Street Address | N/A |
| City and County | N/A |
| State and Zip Code | N/A |
| Telephone Number | N/A |
| E-mail Address *(if known)* | N/A |

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be

heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the
parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties
is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of

another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a
diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that
are at issue in this case.

29 U.S.C. § 218c. 29 U.S.C. § 1109. 29 U.S.C. § 1140 29 U.S.C. § 1132

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*  Patick K. Cullen                        , is a citizen of the
State of *(name)*  Alabama                          .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* N|A                        , is incorporated

under the laws of the State of *(name)*    N|A                          ,
and has its principal place of business in the State of *(name)*

N|A                          .

* Please see attached for additional

*(If more than one plaintiff is named in the complaint, attach an additional page providing
the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* N/A _____, is a citizen of
the State of *(name)* N/A _____. Or is a citizen of
*(foreign nation)* N/A _____.

    b.    If the defendant is a corporation

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

The defendant, *(name)* <u>Lakeland Cemetery Services , Inc</u> is incorporated under the laws of the State of *(name)* <u>Wisconsin</u>, and has its principal place of business in the State of *(name)* <u>Wisconsin</u>. Or is incorporated under the laws of *(foreign nation)* N|A , and has its principal place of business in *(name)* N|A .

*✱Please see attached for additional*

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because *(explain)*:

The amount in controversy is more than $75,000, not counting interest and costs of court, as Plaintiff Chelsea K. Mandeville seeks $1,110,610 from Lakeland Cemetery Services, Inc. and Everstory Partners for lost wages, healthcare costs, emotional distress, reputational harm, worsened medical conditions, reduced future earnings capacity, loss of enjoyment of life, inability to pursue hobbies, ERISA penalties, and punitive damages due to actions from April 15, 2023, to April 4, 2025, including her termination on November 1, 2024. Patrick K. Cullen seeks $1,128,985 from Lakeland Cemetery Services, Inc. and Everstory Partners for the same categories of damages due to the same actions over the same period, including his termination on November 1, 2024. Together, they claim $2,239,595, which exceeds $75,000, based on their combined lost income of $48,917.46 in 2023 and $43,118.05 in 2024, plus future losses and other harms caused by the defendants' conduct

**III.    Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

[PLEASE SEE ATTACHED]

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**IV.**   **Relief**

State briefly and precisely what damages:

[PLEASE                              SEE                              ATTACHED]

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a

nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable

opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    APRIL 3, 2025

Signature of Plaintiff

Printed Name of Plaintiff    CHELSEA MANDEVILLE and PATRICK K. CULLEN

### B. For Attorneys

Date of signing:    N/A

Signature of Attorney    N/A

Printed Name of Attorney    N/A

Bar Number    N/A

Name of Law Firm    N/A

Street Address    N/A

State and Zip Code    N/A

Telephone Number    N/A

E-mail Address    Chayem@yahoo.com    (pro se)

## <u>ADDITIONAL <u>PLAINTIFFS CONTINUED FROM ABOVE)</u></u>

B.    If the Basis for Jurisdiction Is Diversity of Citizenship

    1.    The Plaintiff(s)

        a.    If the plaintiff is an individual

            The plaintiff, *(name)* _____CHELSEA K. MANDEVILLE_____ , is a citizen of the
State of *(name)* Alabama _____ .

        b.    If the plaintiff is a corporation

            The plaintiff, *(name)* N/A_____ , is incorporated

            under the laws of the State of *(name)* N/A_____ ,
and has its principal place of business in the State of *(name)*

            N/A_____ .

## ADDITIONAL DEFENDANT (DEFENDANT NO 2) INDIVIDUAL)

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____CRAIG E. HAUPT_____ , is a citizen of
the State of *(name)* _____WISCONSIN_____ . Or is a citizen of
*(foreign nation)* _____NA/_____ .

## ADDITIONAL DEFENDANT (DEFENDANT NO 3: CORPORATION)

b.    If the defendant is a corporation

The defendant, *(name)* _____EVERSTRY PARTNERS LL.C._____ , is incorporated under
the laws of the State of *(name)* _____DELAWARE_____ , and has its

principal place of business in the State of *(name)* _____NATIONWIDE (HEADQUARTERS IN FLORIDA)_____
Or is incorporated under the laws of *(foreign nation)* _____N|A_____ ,

and has its principal place of business in *(name)* _____N|A_____ .

**STATEMENT OF CLAIMS FOR PLAINTIFFS:**

Both Chelsea Mandeville and Patrick Cullen were employed by Lakeland Cemetery Services, Inc. (LCS) at Crestwood Memorial Cemetery in Gadsden, Alabama, and later at Forest Lawn Gardens and Mausoleums in Anniston, Alabama. Chelsea Mandeville was employed with Everstory Partners (then StoneMor Partners) in 2017-2018, where's she reported OSHA safety violations and managerial misogynistic which affected individuals now acting in Supervisory positions involved in the current claims. Plaintiffs maintained exemplary records without any disciplinary actions or performance concerns prior to engaging in activities protected under the Affordable Care Act (ACA), which is reflected in the consistent pay raises and Patrick Cullens promotion and long standing (14 years) tenure. These protected activities, including reporting potential ACA violations, seeking healthcare benefits, and filing complaints about retaliation, led to a series of retaliatory actions by both LCS and Everstory Partners, including the denial of healthcare enrollment, unjust disciplinary actions, manipulation of paychecks, and eventual termination.

Timeline of Retaliatory Actions

1. March 21, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

• Event: Chelsea's healthcare enrollment was obstructed.

• Protected Activity: Chelsea attempted to enforce ACA rights regarding healthcare benefits.

• Adverse Action: Denial of essential healthcare information, obstructing informed decisions.

- Statute Violated: Section 218c of the FLSA, prohibiting retaliation for ACA rights enforcement.

- Involved: LCS

2. April 26, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

- Event: Chelsea and Patrick disclosed receiving ACA Marketplace Credits.

- Protected Activity: Reporting the receipt of ACA tax credits, a protected act under ACA.

- Adverse Action: Retaliation escalated through disciplinary actions, including written warnings.

- Statute Violated: Section 18C of the FLSA, protecting employees from retaliation for ACA-related disclosures.

- Involved: LCS

3. May 2, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

- Event: Chelsea and Patrick raised ACA compliance concerns with CEO Craig Haupt.

- Protected Activity: Reporting suspected ACA violations.

- Adverse Action: Immediate retaliation through disciplinary actions.

- Statute Violated: ACA whistleblower provisions safeguarding internal reporting.

- Involved: LCS

4. May 4, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

• Event: Both plaintiffs received written warnings for previously unenforced behaviors.

• Protected Activity: Reporting ACA violations.

• Adverse Action: Disciplinary actions, the first of their tenure despite a history of positive performance.

• Statute Violated: Section 1558 of the ACA, which prohibits retaliation for reporting violations.

• Involved: LCS

5. June 30, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

• Event: Meeting with CEO Craig Haupt regarding ACA rights.

• Protected Activity: Discussing ongoing healthcare issues and ACA compliance.

• Adverse Action: Further obstruction of healthcare rights and increased workload.

• Statute Violated: ACA provisions protecting employees from retaliation for seeking healthcare.

• Involved: LCS

6. July 1, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

• Event: CEO Craig Haupt misrepresented healthcare administrator information, blocking enrollment.

• Protected Activity: Continued pursuit of healthcare enrollment under ACA.

• Adverse Action: Obstruction through deceit, preventing plaintiffs' ACA rights.

• Statute Violated: Section 218c of the FLSA, prohibiting retaliation against ACA rights enforcement.

• Involved: LCS

7. July 29, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

• Event: Chelsea and Patrick reported suspected ACA violations and fraud to UnitedHealth and Paychex.

• Protected Activity: External reporting of ACA non-compliance.

• Adverse Action: Escalated retaliation followed.

• Statute Violated: ACA whistleblower protections – cover external reporting.

• Involved: LCS

8. August 1, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

• Event: Chelsea and Patrick faced disciplinary actions during an approved vacation and were denied paid medical leave that was granted to a part-time co-worker.

• Protected Activity: Continuing to assert ACA rights.

• Adverse Action: Unwarranted disciplinary actions during protected leave.

• Statute Violated: ADA and Section 218c of the FLSA.

• Involved: LCS

9. August 8, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

• Event: Everstory Partners imposed new workplace rules, including restrictions on working hours and accommodations for the plaintiffs.

• Protected Activity: Ongoing ACA complaints and rights enforcement.

• Adverse Action: Loss of accommodations, worsening health conditions.

• Statute Violated: ADA and Section 218c of the FLSA.

• Involved: LCS and Everstory Partners

10. September 27, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

• Event: Patrick was falsely accused of neglecting his job in a complaint made to LCS about their failure tonhire additional staff that was misrepresented by LCS management.

• Protected Activity: Ongoing ACA rights assertions.

• Adverse Action: False accusations and loss of managerial privileges.

• Statute Violated: Section 218c of the FLSA.

• Involved: LCS

11. September 29, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

• Event: Chelsea filed a retaliation complaint with the OSHA Whistleblower Protection Program.

• Protected Activity: Filing a formal ACA retaliation complaint.

• Adverse Action: Prompted further retaliation.

• Statute Violated: Section 218c of the FLSA.

• Involved: LCS

12. November 6-10, 2023 (Crestwood Memorial Cemetery, Gadsden, AL)

• Event: Chelsea's paycheck showed discrepancies, and Patrick faced enrollment issues.

• Protected Activity: Linked to the OSHA complaint and prior ACA rights enforcement.

• Adverse Action: Payroll manipulation and further retaliation regarding healthcare enrollment.

• Statute Violated: Section 18C of the FLSA.

• Involved: LCS

13. 2024 (Gadsden, Al)

• Event: Chelsea and Patrick faced reduced duties, inadequate staffing, and hostile work environment.

• Protected Activity: Continued participation with the EBSA and HHS regarding ACA and related issues.

• Adverse Action: Sustained hostile work conditions and retaliation.

• Statute Violated: Section 218c of the FLSA.

• Involved: LCS and Everstory Partners

14. June 6, 2024 ((Gadsden, AL)

• Event: Everstory Partners installed cameras solely at plaintiffs' work locations.

• Protected Activity: Participation in ACA investigations and complaints.

• Adverse Action: Increased surveillance, creating a hostile work environment.

• Statute Violated: Section 218c of the FLSA.

• Involved: Everstory Partners

15. June 21, 2024 (Gadsden, Al) • Event: Meeting with Director of Office of Enforcement of EBSA.

• Protected Activity: Ongoing involvement in ACA-related enforcement actions.

• Adverse Action: Retaliation continued through discriminatory actions.

• Statute Violated: Section 218c of the FLSA.

• Involved: LCS and Everstory Partners

16. July 20, 2024 (Gadsden, Al)

• Event: Meeting with multiple departments of Paychex regarding suspicion of fraud and retaliation.

• Protected Activity: Ongoing participation in ACA investigations.

• Adverse Action: Retaliation continued through increased hostility.

• Statute Violated: Section 218c of the FLSA.

• Involved: LCS and Everstory Partners

17. July 25, 2024 (Gadsden, Al)

• Event: Meeting with Director of OAE of EBSA.

• Protected Activity: Continued pursuit of ACA compliance.

• Adverse Action: Further retaliation for filing complaints.

• Statute Violated: Section 218c of the FLSA.

• Involved: LCS and Everstory Partners

18. August 2024 (Gadsden, Al)

• Event: Everstory Partners imposed a false rule requiring Chelsea and Patrick to leave by 5 PM.

• Protected Activity: Prior ACA complaints and rights enforcement.

• Adverse Action: Loss of accommodations, worsening health conditions.

• Statute Violated: ADA and Section 218c of the FLSA.

• Involved: LCS and Everstory Partners

19. Post-Transfer (2024, Forest Lawn Gardens and Mausoleums, Anniston, AL)

• Event: After transfer, plaintiffs endured a hostile environment, isolation, and defamation.

• Protected Activity: Fallout from ACA whistleblowing.

• Adverse Action: Hostile work environment leading to termination.

• Statute Violated: Section 218c of the F

LSA.

• Involved: LCS and Everstory Partners

20. October 2024 (Forest Lawn Gardens and Mausoleums, Anniston, AL)

• Event: Chelsea and Patrick were wrongfully terminated under false pretenses.

• Protected Activity: Cumulative reporting and complaints over ACA violations.

• Adverse Action: Wrongful termination with fabricated reasons.

• Statute Violated: Section 218c of the FLSA.

• Involved: LCS and Everstory Partners

Summary:

This claim outlines a clear retaliatory pattern against Chelsea Mandeville and Patrick Cullen by Lakeland Cemetery Services, Inc. (LCS) and Everstory Partners following their ACA-protected activities, such as reporting violations, seeking healthcare rights, and filing complaints about retaliation. The adverse actions, including false accusations, loss of managerial duties, payroll manipulation, and eventual termination, occurred despite the plaintiffs' exemplary records and regular raises. These actions violated ACA anti-retaliation statutes, FLSA provisions, and related laws, causing significant harm to both plaintiffs.

## EXPLANATION OF DAMAGES:

### Chelsea K. Mandeville

Chelsea K. Mandeville worked for Everstory Partners in 2017–2018 and then seasonally for Lakeland Cemetery Services, Inc. from March 11 to December 23 each year since 2021, earning $18/hour for 40 hours/week, with $22,145.02 in 2023 and $20,851.99 in 2024, plus $4,500 yearly in benefits, at sites where Lakeland was contracted by Everstory Partners for grounds work. She reported ACA violations to Jeff Simpson on April 15, 2023, and to Craig Haupt on May 20 and June 10, 2023, and requested healthcare Summary Plan Descriptions on May 6, 2023, which Lakeland and Everstory provided on September 9, 2024. After these actions, she faced disciplinary write-ups on April 18, May 23, June 3, June 13, July 18, and August 8, 2023, had her healthcare canceled on August 8, 2023, and was terminated on November 1, 2024. From 2023 to April 4, 2025, Lakeland and Everstory subjected her to

hostility, isolation, rescinded reasonable accommodations, transferred her, reduced her responsibilities and hours, and made false statements about her to coworkers, clients, and potential employers, damaging her reputation and job prospects in her niche cemetery career. These actions worsened her medical conditions, reduced her future earnings capacity, harmed her future employment relationships, caused loss of enjoyment of life, prevented her from pursuing hobbies, and inflicted severe emotional distress. She seeks from Lakeland Cemetery Services, Inc. and Everstory Partners $408,000 in front pay, $8,500 in back pay, $150,000 in compensatory damages for emotional distress, reputational harm, and $6,890.88 in healthcare costs, $100,000 for loss of future earnings capacity due to health and niche career barriers, $50,000 for worsened medical conditions, $50,000 for loss of enjoyment and inability to pursue hobbies, $44,110 in ERISA penalties for 401 days of non-disclosure from June 5, 2023, to September 9, 2024, at $110/day, $300,000 in punitive damages, attorney's fees, and injunctive relief to stop the false statements and document withholding. Her total damages are $1,110,610.

**Patrick K. Cullen**

Patrick K. Cullen worked seasonally for Lakeland Cemetery Services, Inc. from March 11 to December 23 each year, earning $19/hour for 40 hours/week, with $26,772.44 in 2023 and $22,266.06 in 2024, plus $4,500 yearly in benefits, at sites where Lakeland was contracted by Everstory Partners for grounds work. He reported ACA violations to Jeff Simpson on April 15, 2023, and to Craig Haupt on May 20 and June 10, 2023, and requested healthcare Summary Plan Descriptions on May 6, 2023, which Lakeland and Everstory provided on September 9, 2024. After these actions, he received disciplinary write-ups on April 18, May 23, June 3, June

13, July 18, and August 8, 2023, had his healthcare canceled on August 8, 2023, and was terminated on November 1, 2024. From 2023 to April 4, 2025, Lakeland and Everstory subjected him to hostility, isolation, rescinded reasonable accommodations, transferred him, reduced his responsibilities and hours, and made false statements about him to coworkers, clients, and potential employers, damaging his reputation and job prospects in his niche cemetery career. These actions worsened his medical conditions, reduced his future earnings capacity, harmed his future employment relationships, caused loss of enjoyment of life, prevented him from pursuing hobbies, and inflicted severe emotional distress. He seeks from Lakeland Cemetery Services, Inc. and Everstory Partners $426,000 in front pay, $8,875 in back pay, $150,000 in compensatory damages for emotional distress, reputational harm, and $96,000 in healthcare costs, $100,000 for loss of future earnings capacity due to health and niche career barriers, $50,000 for worsened medical conditions, $50,000 for loss of enjoyment and inability to pursue hobbies, $44,110 in ERISA penalties for 401 days of non-disclosure from June 5, 2023, to September 9, 2024, at $110/day, $300,000 in punitive damages, attorney's fees, and injunctive relief to stop the false statements and document withholding. His total damages are $1,128,985.

**COMBINED TOTAL** of Chelsea $1,110,610, Patrick $1,128,985, is $2,239,595.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION

CHELSEA K. MANDEVILLE

*and*

PATRICK K. CULLEN,

(Plaintiffs)

v.

LAKELAND CEMETERY SERVICES, INC., CRAIG HAUPT (in his capacity as Plan Administrator)

*and*

EVERSTORY PARTNERS L.L.C.,

(Defendants)

PLAINTIFFS CONTACT INFORMATION:

CHELSEA K. MANDEVILLE

Email: Manc90937@gmail.com

Phone: (256) -525-5932

PATRICK K. CULLEN

Email: Phathacked@proton.me

Phone: (256)-589-2167

Address: 400 W. Blue Mountain Rd

Anniston, AL 36201

CASE NO .: [*To be assigned*]

FILED: April 1st, 2025

1

COMPLAINT FOR RETALIATION UNDER THE AFFORDABLE CARE ACT, THE EMPLOYEE

RETIREMENT INCOME AND SECURITY ACT, AND RELATED ALABAMA STATE LAW

CLAIMS

I.   INTRODUCTION

We, Chelsea K. Mandeville and Patrick K. Cullen, hereinafter collectively referred to as 'Plaintiffs,' bring this action against **Lakeland Cemetery Services, Inc.** ('LCS'), **Everstory Partners L.L.C.** ('Everstory'), and **Craig Haupt** (in his capacity as Plan Administrator), hereinafter collectively referred to as 'Defendants,' under the whistleblower protection provisions of the Affordable Care Act (ACA), codified at *29 U.S.C. § 218c*, which adopts enforcement procedures from *49 U.S.C. § 42121(b)*, and under applicable laws of the State of Alabama. We allege that Defendants engaged in a sustained and unlawful campaign of retaliation against us following our engagement in ACA-protected activities, which included reporting ACA violations, disclosing our reliance on Advance Premium Tax Credits *(APTC)*, and participating in related legal proceedings. Additionally, Defendant Craig Haupt, in his duties as Plan Administrator for Lakeland Cemetery Services employer-sponsored health plan, violated the Employee Retirement Income Security Act *(ERISA)* by interfering with our rights under ERISA *Section 510*, and withholding the Summary Plan Description *(SPD)* in violation of ERISA *Title I*, and has committed acts against us when we were owed a duty of care that we believe amount to Breach of Fiduciary Duty.

Everstory was aware of the ACA violations throughout 2023 due to the significant impact of LCS's retaliatory actions on our ability to perform our duties. Everstory had knowledge of our legal proceedings until we filed

2

whistleblower complaints with the Occupational Safety and Health Administration (OSHA) on **September 29, 2023** (Chelsea Mandeville), and **October 5, 2023** (Patrick K. Cullen).

We invoke the "kick-out" provision of *29 U.S.C. § 218c(b)(2)(A),* which authorizes *de novo.*

Review in federal district court when the Secretary of Labor fails to issue a final decision within 210 days of an OSHA whistleblower complaint, absent any bad faith delay by the complainant. As of March 30, 2025, 517 days have elapsed since Chelsea Mandeville's filing and 510 days since Patrick K. Cullen's filing, exceeding the statutory threshold, with no delay attributable to bad faith. Pursuant to the principles of the Expedited Case Processing Pilot, in which our OSHA Whistleblower Investigators granted us participation, we hereby request expedited review of this case if the court deems the circumstances appropriate, taking into consideration all parties involved and any ongoing effects on their emotional, financial, and professional well-being.

We assert federal claims against LAKELAND CEMETERY SERVICES and EVERSTORY PARTNERS for acts of retaliation under *29 U.S.C. § 218c* taken against us for engaging in protected activities. We assert claims against LCS for Retaliation and Interference, under ERISA Section 510,

against CRAIG HAUPT *(acting in his capacity as plan administrator)* for Withholding the Summary Plan Description, under ERISA Title I, and for Breach of Fiduciary Duty while we were owed a duty of care, also under ERISA. We assert Alabama state law claims against LCS for Wrongful Termination, Intentional Infliction of Emotional Distress (IIED), and Invasion of Privacy. We assert federal claims against EVERSTORY PARTNERS for Defamation by Libel, and Defamation by Slander, we assert the claim of Civil Conspiracy to Harm Employment against both LAKELAND CEMETERY SERVICES, INC., and EVERSTORY PARTNERS L.L.C..

These claims stem from a pattern of retaliatory conduct, culminating in our Wrongful Termination on November 1, 2024, which manifested itself in a now familiar, malicious pattern of defamatory and/or misleading claims of Patrick Cullen brandishing weapons he does not possess and insinuating aggressive or threatening mannerisms, claiming that Chelsea accosted or harassed employees, and even go so far as to claim a history of similar behaviors have occurred leading to the "final straw" prompting our termination in a blatant joint effort between LCS and Everstory. We have sufficient reason to believe these actions are motivated at least in part by Chelsea Mandeville's prior OSHA safety complaint against Stonemor its effects.

Everstory (*then StoneMor Partners L.L.C.*) in 2017-2018, which we believe fueled Defendant Everstory representatives animosity as of to date it is the only OSHA citation on record for the corporation in Alabama and the new general manager is the same employee who was tasked with dealing with that citation. Strong evidence exist of all above claims, including recorded audio, law enforcement paperwork from the 7th Judicial Major Crimes Unit, documents from the Employee Benefits Security Administration, documents showing targeted surveillance and written communications that clearly point to the possibility of agreed upon outcomes leading up to extreme hostile work environment, worksite transfer and termination. We believe our evidence is overwhelming and assert these claims in good faith in our pursuit of justice.

This Court has jurisdiction over our ACA and ERISA claims under *28 U.S.C. § 1331* (federal question jurisdiction) and supplemental jurisdiction over our state law claims under *28 U.S.C. § 1367(a)*, as they form part of the same case or controversy. Venue is Proper in the Northern District of Alabama, Eastern Division, under *28 U.S.C. § 1391(b)(2)*, As the events giving rise to this action occurred in Calhoun County and Etowah County, Alabama.

We respectfully demand a trial by jury under Federal Rule of Civil Procedure (FRCP) 38 and seek all relief under *29 U.S.C. § 218c(b)(3)* and ERISA, including compensatory damages, equitable relief, statutory penalties, and attorneys' fees.

## II. PARTIES

- **CHELSEA MANDEVILLE** (*pro se*):

    I reside at 400 W. Blue Mountain Road, Anniston, AL 36201. I was Employed by LCS until my termination on November 1, 2024. I previously worked for Everstory Partners (*then StoneMor Partners L.L.C.*) from 2017 to 2018, during which I filed an OSHA safety complaint and reported managerial misconduct, leading to staff relocations and managerial changes which involved many of the same Everstory representatives who facilitated these actions presented to this court today. I began employment with LCS in 2021 at $11.50 per hour, rising to $18.00 per hour by my termination, reflecting my strong performance, and evidenced by consistent supervisor praise for my attention to detail and interpersonal and communication skills. I had no disciplinary actions, counseling, or other performance related concerns prior to my engagement in ACA-protected activities.

- **PATRICK K. CULLEN** (*pro se*):

I reside at 400 W. Blue Mountain Road, Anniston, AL 36201. I was. Employed by LCS until my termination on November 1, 2024. I started with LCS in May of 2010 as A Crew member at $8.25 per hour, advancing to Crew Lead in 2017, earning $19.00 per hour at termination. My supervisors regularly commended my work ethic and managerial skills, reflected in pay increases, with no performance issues prior to my ACA-protected Activities. I maintained the grounds of a high-profit Everstory location, earning praise from families and staff for its upkeep for fourteen years, and eight consecutive years as crew leader until hostilities necessitated a transfer in September 2024.. I had no disciplinary actions, counseling, or other performance related concerns prior to my engagement in ACA-protected activities.

- LAKELAND CEMETERY SERVICES, INC. (LCS): LCS is a corporation incorporated under Alabama law as a foreign entity, with its primary office in Wisconsin and operates nationwide, including in Alabama. LCS was our direct employer, providing ground maintenance services for Everstory under contractual arrangement.

- EVERSTORY PARTNERS L.L.C.: Everstory is a corporation operating nationwide, including, Alabama, owning properties where we regularly performed our hired duties for LCS. Formerly StoneMor Partners L.L.C., Everstory employed Chelsea Mandeville from 2017 to 2018 and has contracted LCS for maintenance services starting around 2007.

- CRAIG HAUPT: Craig Haupt is the C.E.O/VP of LCS and the Plan Administrator of LCS's Employee benefit plan, responsible for providing plan documents, including the Summary Plan Description, and various other documents mandated under ERISA.

III. JURISDICTION AND VENUE

This Court has original jurisdiction over our federal claims under *29 U.S.C. § 218c* and

ERISA (*29 U.S.C. §§ 1132, 1140*), pursuant to *28 U.S.C. § 1331*.

We invoke *29 U.S.C. § 218c(b)(2)(A)*, authorizing this action due to the absence of a final decision by the Secretary of Labor within 210 days of our OSHA whistleblower complaints, filed on September 29, 2023 (Chelsea Mandeville), and October 5, 2023 (Patrick K. Cullen).

As of March 30, 2025, 517 days and 510 days have elapsed, respectively. OSHA invited us to participate in its Expedited Case Processing Pilot, which we accepted. Despite this, prolonged inaction and ongoing restrictions to the OALJs scope of authority affect ALJs ability to adjudicate the full scope of the claims we preset to this honorable court, which necessitate this request to present all facts and issues arising in relation so that may be presented and remedied without hindrance of rights, protections and remedies if the court sees it fit to do so.

This Court has supplemental jurisdiction over our state law claims under *28 U.S.C. § 1367(a)*, as they arise from the same nucleus of operative facts as our federal claims. Venue is proper in the Northern District of Alabama, Eastern Division, under *28 U.S.C. § 1391(b)(2)*, as the events and omissions occurred in Calhoun County and Etowah County, Alabama, within this division.

## IV.. PROCEDURAL BACKGROUND

We filed whistleblower retaliation complaints with OSHA under *29 U.S.C. § 218c* and *29 CFR Part 1984*, for Chelsea Mandeville on September 29, 2023, and Patrick K. Cullen on October 5, 2023, alleging retaliation by LCS occurring on the property of Everstory Partners for engaging in activities protected under the Affordable Care Act.

OSHA invited us to participate in its Expedited Case Processing Pilot, which we accepted and, as instructed, we requested closure of OSHA investigations and sought de novo hearings before an Administrative Law Judge (ALJ), filed on April 4, 2024, per *29 CFR § 1984.107*. As of March 30, 2025, our ALJ proceedings remain in discovery, with no hearing currently scheduled, despite 517 and 510 days, respectively, having passed since our initial filings -- far exceeding the 210-day threshold *of 29 U.S.C. § 218c(b)(2)(A)*. No delay is due to our bad faith; we have diligently engaged in discovery. Pursuant to *29 CFR § 1984.114(b)*, we will notify the Assistant Secretary for OSHA, the Chief Administrative Law Judge, and the Administrative Review Board within seven days of filing this Complaint.

## V. STATEMENT OF FACTS

Historical Context:

In 2017-2018, I (Chelsea Mandeville), while employed by Everstory (then StoneMor Partners L.L.C.), filed an OSHA safety complaint, resulting in a manager's removal and Relocation of representative Rachel Davenport. Gary Crowe, then a maintenance worker, Was present. We believe this fostered animosity that resurfaced in 2023-2024 retaliation by Davenport and Crowe, now Everstory supervisors.

We engaged in the following protected activities:

March 21, 2023: Requested the SPD and ACA-required documentation of LCS's health coverage, a protected activity under ERISA Section 510.

April 26, 2023: Informed supervisor Jeff Simpson of our APTC reliance, protected activity under ACA Sec. 1558 & U.S.C 29 218c, and reported LCS's.

ACA noncompliance, contacting the Employee Benefits Security Administration (EBSA) when documents were withheld.

May 2, 2023: Met with CEO Craig Haupt to address ACA violations affecting our APTC eligibility and reiterated our request for the SPD.

June 30, 2023: Reiterated to Haupt the need for ACA compliance and the SPD, which he failed to provide, misrepresenting the Plan Administrator's identity by omission and frequently pointing to Paychex, a payroll and benefits platform used by LCS.

July 10, 2023: Reported ACA violations and fraud to Paychex, who obstructed our requests for documentation.

July 29, 2023: Filed a fraud and ACA violation report with UnitedHealth Group, who refused to provide documents despite acknowledging our rights.

September 29, 2023: I (Chelsea Mandeville) filed an OSHA whistleblower complaint.

October 5, 2023: I (Patrick K. Cullen) filed an OSHA whistleblower complaint.

November 2023: Patrick Cullen, after multiple hang ups from United Health, got an employee on the phone who informed him of the existence of his account, matching his social, phone number but having an incorrect birthdate. Cullen had never received anything from LCS after enrolling on July 5th, 2023.

December 2023 – March 2024: Pressed EBSA and the Department of Health and

Human Services (HHS) investigate violations and retaliation.

April 4, 2024 – September 2024: Pursued ALJ review and continued reporting violations to applicable entities.

April 2024: Tax withholding skyrocketed, with a notable increase in tax withholdings that can be witnessed in paystubs.

June-July 2024 – Emailed CEO of Paychex resulting in multiple departments managerial staff reaching out, ending in telling Patrick Cullen to "get a subpoena" in regard to documents requested regarding application for health coverage submitted on July 5th, 2023, through Paychex, HIPPA release forms submitted as well prior. United Health took the same route, refusing to release these documents.

October 30, 2024: I (Chelsea Mandeville) notified LCS's attorney of our intent to amend our ALJ appeal(s)

<u>Defendants responded with the following retaliatory action:</u>

May 4, 2023: LCS issued our first disciplinary actions, selectively enforced, two days after meeting with Haupt.

June 1, 2023: LCS withheld healthcare details and the SPD from me (Chelsea Mandeville) post-APTC loss.

July 5, 2023: LCS blocked my (Patrick K. Cullen's) coverage and obstructed Chelsea's access to the employer sponsored health coverage.

July 17-18, 2023: LCS falsified my (Chelsea Mandeville's) injury report, denying me the identity of covered workers compensation physicians & intimidating me out of pursuing a claim which resulted in an early return to work with an injury that did not receive medical care.

Late July 2023: Denied paid leave, forcing vacation use during Patrick's illness. After three coworkers left, LCS refused to hire replacements, leaving us to manage a five-person workload, sabotaging our employment and reputation. Patrick's hiring and purchasing authority was curtailed, and Chelsea's communications were ignored when prior to her protected activities she was often privileged in communications, with new reporting requirements imposed.

August 1, 2023: Haupt's attorney disciplined us for following her communication directives.

October 11, 2023: LCS manipulated my (Chelsea Mandeville's) payroll, causing a $1,200+ overdraft shortly after filing her whistleblower retaliation complaint.

March – June 2024: LCS withheld wages, vacation pay, leave, and adjusted taxes without consent.

Early June 2024: Installed cameras at Crestwood two months before other sites, escalating surveillance post-ALJ filing.

June – July 2024: Withheld funds owed me (Chelsea Mandeville) and reneged on Haupt's promises.

Mid-July 2024: Davenport implied job loss, citing my 2017 OSHA complaint.

Late July 2024: Revoked my (Chelsea Mandeville's) accommodation.

Early August 2024: Denied my (Patrick K. Cullen's) leave; refused disability discussions.

August 8, 2024: Crowe ordered my accommodation's rescission, dismissing our litigation and confirming communications between LCS management in regard to us and our protected activities.

Late August 2024: Faced hostility & defamation, forcing what was presented as a

"Lateral transfer" over twenty miles to a new location in efforts to "help things" (Jeff Simpson upon Chelsea's requests that he step in due to overbearing hostility and stress from Everstory actions)

September 1, 2024: Hours and duties are cut; surveillance increased. And hostility encouraged by both Lcs AND Everstory staff

September 8, 2024: Removed from premises with supervisory coordination.

November 1, 2024: Terminated, timed with ACA open enrollment and post-ALJ amendment notice.

This pattern reflects Defendants' intent to retaliate via collaboration in a systemic manner meant to insight working conditions so unbearable for us that we would be forced to resign, and in the absence of relinquishing or positions,

resorting to false statements and allegations to build a false framework for our eventual termination in efforts to avoid anti-retaliation provisions. In doing so, Defendants have caused & continue causing significant personal and Professional harm.

VI. EVIDENCE

We possess overwhelming evidence beginning in April-May 2023 with audio documented disclosure of credits, inquiries into LCS benefits, meetings with Haupt, confrontation with Everstory staff when accommodations rescinded, confrontation with Everstory staff on Oct 27th, 2024, in regards to refusing Saturday work, reducing scope of work and resulting hour reduction, documents from EBSA, HHS and OSHA. Documents from coworkers showing "bonuses" paid during medical surgery leave, while Plaintiffs were denied the same requests. Documents from LCS show secret disciplinary actions taken starting two days after the first meeting with Haupt and one week after ACA disclosure.

Our claims are backed by compelling evidence of retaliation, conspiracy, and premeditation. Monetary Penalties were newly enforced on businesses in 2023-2024 following a decade-long reprieve, during which there was a lack of enforcement of major fines imposed on employers for non-compliance with responsibilities mandated under the ACA. Prior to our engagement in protected activities on May 4th, *2023 (disclosing our receipt of the APT Credits which would trigger fines upon our former employer as it indicated our participation in marketplace plan coverage as well as the businesses non-compliance with applicable mandates).* We suspect that Haupt viewed our disclosed chronic conditions and our fears of not being able access affordable coverage for regular treatment as a threat to tax "kickbacks", or monetary incentives from UHC to keep costs lower than the projected numbers for each plan year,

The substantial implications for significant penalties and losses that we imposed on the business are what we believe led to the continuous actions against us meant to cause harm in any way possible.

## VII. DAMAGES SUSTAINED

23. Defendants' actions caused severe emotional distress, financial losses, reputational Harm, career setbacks, harm to future potential working relationships, employment capacity and future earnings potential due to exacerbation of their health conditions and the effects that has on ability to build and maintain productive working relationships, sustained increased medical costs, and diminished ability to pursue activities & hobbies once enjoyed.

## VIII. CLAIMS FOR RELIEF

*We incorporate all preceding paragraphs.*

Between March 21, 2023, and April 4, 2024, we engaged in protected activities under *29 U.S.C. § 218c(a)*, known to Defendants, who retaliated with adverse actions in violation Thereof.

Relief Sought: Compensatory damages, back pay, front pay (reinstatement infeasible), Punitive damages, injunctive relief, and remedies *under 29 U.S.C. § 218c(b)(3).*

*We incorporate all preceding paragraphs.*

We engaged in protected ERISA activities, including requesting the SPD on March 21, 2023, and reporting plan-related violations. Defendants retaliated with adverse actions, including discipline and termination, violating *29 U.S.C. § 1140.*

<u>Relief Sought:</u> Reinstatement, back pay, front pay, compensatory damages, and equitable relief.

Haupt, as Plan Administrator, breached his fiduciary duty under *29 U.S.C. § 1104* by failing to provide the SPD, misrepresenting the Plan Administrator's identity by omission of his own role as Plan Administrator, and Obstructing our access to plan benefits to retaliate against us, causing financial and emotional harm.

<u>Relief Sought:</u> Compensatory damages for losses resulting from the breach, equitable, relief, and removal of Haupt as fiduciary if deemed appropriate.

*We incorporate all preceding paragraphs.*

LCS terminated us on November 1, 2024, in retaliation for our ACA and ERISA-protected activities, violating Alabama public policy and in apparent coordination with Everstory staff. The pretextual reasons for termination are disproved by our evidence, which include audio recordings, payroll records, phone logs and documentation from the 7th Judicial Major Crimes Unit of Calhoun.

<u>Relief Sought:</u> Compensatory and punitive damages.

*We incorporate all preceding paragraphs.*

LCS and Everstory published false and defamatory statements about us, including in Termination letters and to third parties (e.g., Everstory staff), accusing us of misconduct such as threatening with weapons and accosting employees and claiming harassment, harming our reputations under Alabama law.

<u>Relief Sought:</u> Compensatory and punitive damages.

*We incorporate all preceding paragraphs.*

LCS's outrageous conduct, including falsifying injury reports, taunting us with the timing of our terminations and denying accommodation, caused severe emotional distress under Alabama law.

<u>Relief Sought</u>: Compensatory and punitive damages.

*We incorporate all preceding paragraphs.*

LCS intentionally intruded into our private affairs by installing surveillance cameras in Private areas (e.g., break rooms) at Crestwood in June 2024 and at the transfer location in August 2024 without notice or consent, violating our reasonable expectation of privacy under Alabama law.

<u>Relief Sought:</u> Compensatory damages

*We incorporate all preceding paragraphs.*

LCS and Everstory conspired to retaliate against us, using my 2017 OSHA complaint as

A basis, violating Alabama law.

<u>Relief Sought</u>: Compensatory and punitive damages.

IX. RELIEF SOUGHT

We pray for:

Declaratory judgment of violations under *29 U.S.C. § 218c,* ERISA, and Alabama law;

- Compensatory damages for distress, losses, and reputational harm;

- Back pay and front pay;

- Punitive damages;

- Statutory penalties under ERISA;

- Injunctive relief against further retaliation and privacy invasions

- Attorneys' fees and costs under *29 U.S.C. § 218c(b)(3), ERISA,* and *FRCP 54;*

- Other relief as deemed just under applicable Federal and Alabama State laws.

## X. JURY DEMAND

We respectfully demand a trial by jury on all triable issues under *FRCP 38* in an expeditious manner if deemed just and appropriate with respect the significant time for discovery and large number of discoverable documents already having been exchanged or offered to defendants.

## XI. CERTIFICATION

Pursuant to *FRCP 11,* we certify that this Complaint is well-grounded in fact, supported by evidence (e.g., audio recordings, emails, payroll records), and warranted by law.

Respectfully submitted,

/s/ Patrick K. Cullen                                    /s/ Chelsea Mandeville

Patrick K. Cullen                                        Chelsea Mandeville

400 W. Blue Mountain Rd                                  400 W. Blue Mountain Rd

Anniston, AL 36201                                       Anniston, AL 36201

Telephone: (256) 589-2167                                 Telephone: (256) 525-5932

Email: Phathacked@proton.me                              Email: Manc90937@gmail.com


Dated: March 30, 2025

UNITED STATES DEPARTMENT OF LABOR

**OFFIC OF ADMINISTRATIVE LAW JUDGES**

CHELSEA K. MANDEVILLE

and

PATRICK K. CULLEN

255-525-5932

Manc90937@gmail.com

256-589-2167]

Phathacked@proton.me

400 W. Blue

Mountain Road Anniston, AL

36201

Office of Administrative Law Judges

U.S. Department of Labor

800 K Street, NW, Suite 400

Washington, DC 20001-800

**APRIL 3, 2025**

Re: ACA Whistleblower Cases ACA-2024-00001 and ACA-2024-00002
PATRICK K. CULLEN and CHELSEA K. MANDEVILLE] v. Lakeland Cemetery Services
Inc., *et al.*

## NOTICE OF ELECTION TO FILE IN FEDERAL DISTRICT COURT

FROM: Chelsea Mandeville and Patrick Cullen

Please take notice that I, CHELSEA K. MANDEVILLE and I, PATRICK K. CULLEN, the complainant(s)t in the above-referenced ACA whistleblower retaliation cases (ACA-2024-00001 and ACA-2024-00002), hereby elect to exercise our rights under *18 U.S.C. § 1514A(b)(1)(B)* and *29 C.F.R. § 1980.114* to file a civil action in the United States District Court for the Northern District of Alabama.

As more than 210 days have elapsed since the initial filing of our respective complaints with the Department of Labor on September 29, 2023 (*Mandeville*) and October 5, 2023 (*Cullen*) and there has been no final decision issued by the Secretary of Labor, I am entitled to bring an action for *de novo* review in federal district court.

Enclosed please find copies of the following documents filed with the United States District Court for the Northern District of Alabama:

1. Complaint

2. Motion to Transfer Administrative Proceedings

3. Civil Cover Sheet

4. Application to Proceed In Forma Pauperis

5. Motion for Appointment of Counsel

We respectfully request that the administrative proceedings be stayed pending the outcome of the federal court action. Please accept our gratitude for the patience this court has displayed in allowing us to navigate the complexities of this administrative process and the continued attention to the matters at hand.

Please contact us if you have any questions or need anything further from either of us. Please allow adequate time for this process to occur, as we have initiated the process through physical mail which may take several days to make it's way to the courts for processing.

Sincerely,

CHELSEA K. MANDEVILLE

and

PATRICK K. CULLEN

255-525-5932

Manc90937@gmail.com

256-589-2167]

Phathacked@proton.me

400 W. Blue

Mountain Road Anniston, AL

36201

## CERTIFICATE of SERVICE

I, *CHELSEA K. MANDEVILLE,* and I, *PATRICK K. CULLEN*, hereby certify that the foregoing has been served on the following parties by means of electronic communication where authorized to do so via email or tthe Office of Administrative Law Judges (OALJ) E-file portal, or physically via the Unitrd States Postal service:

LAKELAND CEMETERY SERVICES INC.

Megan Phillips  Huizinga,  Esq.

Knowles & Sullivan, LLC

413 Broad St

Gadsden, AL 35901

(256)547-7200

Megan@kkslawgroup.com

04/03/25

04/03/25

**REPORT DETAILS**

_Report Submission Date:_
7/28/2023

**Reported Company/Branch Information:**

_What is your UnitedHealthcare group number?_
1480004

_What is your member number?_
00091307100

_Do you have any other Insurance?_
Yes

_Name of the person you're reporting:_
Craig Haupt

_Address of the person you're reporting if known:_
1195 Flighteway Dr.
De Pere, WI 54115

_Provider's demographic Information:_
(920)-336-1801

_When did the alleged fraud, waste or abuse you're reporting occur?_
May 10, 2023

_Details:_
Craig is most likely committing Insurance fraud, which kept Chelsea's spouse, Patrick Cullen, non-employee, from enrolling in the employer-provided insurance. Craig gave misleading information so Patrick could not enroll.

_Follow-Up Notes:_
There are no additional notes for this report.

_Follow-Up Questions/Comments_
_7/29/2023 8:33 PM posted by Organization:_
Thank you for reporting to the UnitedHeathcare Fraud Hotline. If additional Information is needed upon review of report, we will contact you. Please be assured that the company takes your report seriously. Wahin 24 hours of submission of your referral Into Ethic Pont/Novex It will be "dosed" and transferred to an Internal UHC Investigations, Special Investigations Unit (SU) case management system. Please note, If you are requesting updates or Information related Fraud, Waste or Abuse (PWA) tips submissions, in order to maintain the Integrity of the

Investigations, we will not be able to provide additional updates. This Information provided constitutes a full response from UHC Investigations and contains all information available for release in light of the aforementioned confidentiality statement

*Chat Transcripts:*
There are no chat transcripts for this incident

Exhibit (A)

Essential Document requests/
engagement in protected
activity.



# LCS update
3 messages

**Craig Haupt** <craigh.lcs@gmail.com>                          Fri, May 19, 2023 at 10:40 AM
To: Chelsea Mandeville <chelseamandeville24@gmail.com>

I have been trying to resolve your unemployment issue. I have talked to some people who connect me with other people. I just emailed the issue to another person named Thomas Daniel. I will update you when I get some news.

--
**Craig Haupt**
**Vice President**
**Lakeland Cemetery Services Inc.**
craigh.lcs@gmail.com
**920-336-1801 Office**
**920-901-5813 Cell**

**Chelsea Mandeville** <chelseamandeville24@gmail.com>         Fri, May 19, 2023 at
                                                                11:39 AM
To: Craig Haupt <craigh.lcs@gmail.com>

Good Morning Craig,
Thank you for the update. As of this morning the overcharge that I requested you repay has been fixed, I took care of it. I'll be repaying my half of it.
I let them know we had communicated with our supervisor that even though our hire date was the 15th, we Ok'd it to start the following week due to personal/legal issues.
I will advise to maybe keep an eye out for correspondence or a phone call from them, possibly due to the mass mailed letter. They just said they'd be trying to contact you.

I'd like to try to touch base with you, again, on the paperwork and information we've requested multiple times. While I appreciate the communication you've offered in regards to matters pertaining to Paychex, we've not gotten any response from you about the following, though I'm unsure why:
-Workers Compensation:
 I know you said you'd be happy to start the process, and I agreed that I'd like to recieve the paperwork to review the process/policies, and possibly to file...but we've still not recieved this from you. I've requested it from Jeff this week as well.

-Healthcare SPD: I don't believe the documents provided are the Summary Plan Description, as it does not have the information required to inquire about the plan.

You can connect me with a benefits representative or the Plan Administrator who should be able to answer these questions.

- Paperwork pertaining to our classification and benefits, job responsibilities, etc. For both Patrick and myself. These would include handbooks for each year we were rehired, I-9s and rehire forms, job descriptions, etc.

-Compensation for the issues we've discussed as a result of these

Craig, we're really trying to give you the chance to handle this within the company. We told you in our meeting that we love our jobs, and wanted to bring these things to your attention to give you the chance to make it right, with employees who have done your company very well considering the conditions they've worked in.
We're being treated like we've abandoned our jobs here while everyone else is being glossed over, and no fault is being taken on by our company or supervisor. We can only do what we are equipped and manned to do.
I told you communication was essential regarding these matters, and I'm still finding myself having to write you these requests almost every week.
I can call the Alabama Workers Comp line if I need to, as well as the correct boards that will assist in enforcing the benefits and ACA Requirements, misclassification, personal property etc., if I absolutely need to, but again, I'm trying to avoid that for both myself and the company.
I would request that you let me know what path you would prefer me to take. Ignoring it is forcing us to have to go elsewhere for answers, and we've been extremely open and understanding.
We will still anticipate meeting with you on Memorial day week, and will give you until then to provide us with a plan of action, as we've stated, and you've requested, but I need, at the very least, all of the documents we've requested before then, or a reason as to why they can't be produced, please. These are documents that from what I understand should be upkept by the company, and the handbook states you'd be happy to provide our files.


Chelsea Mandeville



[Quoted text hidden]

**Chelsea Mandeville** <chelseamandeville24@gmail.com>                    Sat, May 27, 2023 at
                                                                                                                    8:51 PM
To: tatum.ginn@beasleyallen.com

An exchange still requesting special enrollment/plan administrator info, paperwork, etc.
Paperwork/ SPD/ workers compensation still hasn't been recieved.
[Quoted text hidden]



# LCS Insurance
5 messages

**Craig Haupt** <craigh.lcs@gmail.com>                    Wed, May 10, 2023 at 8:08 AM
To: Chelsea Mandeville <chelseamandeville24@gmail.com>

I have attached the health plans and dental plan information. I am still working with
Paychex on how to sign up through your app.

I gave you access to benefits on the Flex app. I have not played around with it yet to see
how it works.

--
**Craig Haupt**
**Vice President**
**Lakeland Cemetery Services Inc.**
craigh.lcs@gmail.com
**920-336-1801 Office**
**920-901-5813 Cell**

**Chelsea Mandeville** <chelseamandeville24@gmail.com>        Wed, May 10, 2023 at
                                                              4:42 PM
To: Craig Haupt <craigh.lcs@gmail.com>

Thanks for sending those over, I recieved the email this morning that my access to FLEX
had changed, and was curious as to what that was about.
I'm able to access it, however I can't seem to get into contact with anyone regarding
Special Enrollment periods. I've called United Health, Paychex FLEX, who directed me to
Flock, however flock can't give me any information as an employee due to HIPPA (?? I
have no idea), and suggested I contact my employers HR and speak to the plan
administrator.
I didn't really want to bother you with it, but I've kind of hit a dead end, so I'm going to just
kind of lay out the info I need answers to.
-So, technically, I'm thinking we're considered "New Hires" in the company, and therefore
should qualify for a Special Enrollment because we now qualify for new Healthcare (your
offered benefits)....right?
But is it layoff if there's an anticipated return date, as isn't this considered a furlough?
Does that even matter, or is it strictly defined by how the employer Classifies it?

-When I go to enroll in benefits, it asks for supporting documents....I don't really know
what would qualify? I mean, I have the layoff letter with anticipated return date, but it's not
accurate, and it's mandating that the QLE be dated after 04/10/2023. I assume this is

because most Healthcare plans only accept Special Enrollment up to 30 days after said occurrence.....so, what do I do here? What's the qualifying life event? While I know ACA mandates it be offered within 90 days of hire, this company/benefits provider only allows 30 days?

-It says something about an Auto-waiver when I log into the benefits section, under enrolled benefits. Is this....a thing? I know you can be automatically enrolled, but am unfamiliar with waiving the coverage.. Seeking clarity, as we didn't give a signed waiver when we weren't provided with the requested SPD last year? I'm hoping that, maybe, it's just an automated label when an employee hasn't yet signed up/explicitly waived coverage? Can you let me know  if this was something that was manually input, or just an automated thing?

Again, I apologize for having to continue to throw these issues out. I truly did try to exhaust all the options available, but I just don't have the clearance/status needed in order to access these.
If you have a designated plan administrator that isn't yourself, I'd be happy to handle it through them as well. Once I get that info I'll be able to poke around the benefits portal a but more.

Patrick and I will be here at the Cemetery for a while catching up after the mower breakdown, so if you need to give me a call to clarify, please feel free.


Thanks again.
[Quoted text hidden]

---

**Chelsea Mandeville** <chelseamandeville24@gmail.com>               Sat, May 27, 2023 at 8:49 PM
To: ~~chelseamandeville24~~@~~gmail~~.com

This is the exchange that takes place when Craig suddenly puts access to health care enrollment on our Payroll providers app/website (Paychex). It is only myself, my husband, and 5 other people who have access to this benefit. (On the benefits page of our Paychex profile, you can see who else is able to enroll in benefits or who has access to the benefits. It looks like it's our Regional manager and 2 others, the owner Dan Haupt and Craig Haupt. Noone else seems to have been offered benefits. )

The healthcare enrollment  required a qualifying event, and as I'm unsure what that would be and the CEO won't tell me who the plan administrator is, I'm still unable to enroll im benefits.
[Quoted text hidden]

---

**Chelsea Mandeville** <chelseamandeville24@gmail.com>               Mon, Sep 18, 2023 at 10:47 AM
To: ~~chelseamandeville24~~@~~gmail~~.com

because most healthcare plans only accept Special Enrollment up to 30 days after said occurrence.....so, what do I do here? What's the qualifying life event? While I know ACA mandates it be offered within 90 days of hire, this company/benefits provider only allows 30 days?

-It says something about an Auto-waiver when I log into the benefits section, under enrolled benefits. Is this....a thing? I know you can be automatically enrolled, but am unfamiliar with waiving the coverage.. Seeking clarity, as we didn't give a signed waiver when we weren't provided with the requested SPD last year? I'm hoping that, maybe, it's just an automated label when an employee hasn't yet signed up/explicitly waived coverage? Can you let me know if this was something that was manually input, or just an automated thing?

Again, I apologize for having to continue to throw these issues out. I truly did try to exhaust all the options available, but I just don't have the clearance/status needed in order to access these.
If you have a designated plan administrator that isn't yourself, I'd be happy to handle it through them as well. Once I get that info I'll be able to poke around the benefits portal a but more.

Patrick and I will be here at the Cemetery for a while catching up after the mower breakdown, so if you need to give me a call to clarify, please feel free.


Thanks again.
[Quoted text hidden]

---

**Chelsea Mandeville** <chelseamandeville24@gmail.com>                Sat, May 27, 2023 at 8:49 PM

To: ~~redacted@redacted.com~~

Exhibit (B)

Disciplinary Actions
and
Incident reports

# Incident Report

Employee/Employees Involved: Pat Cullen / Chelsea Mandeolk

Supervisor/Crew Leader: Jeff Simpson

Date: 6,22,23

Describe the Incident:

I received a complaint from G.M. of Crestwood about the
grass not being cut. I called Pat at 2:04 pm and got no
answer. I followed up with a text to Pat at 2:06 pm asking
Pat to call me. Pat returned my call at 3:37 pm
and told me that He and Chelsea had been at

Results of Incident and Action taken:

the hospital due to a flare up of Chelsea's lupus.
I said I was sorry that happened and explained the complaint
to Chelsea and Pat. They stated they didn't understand the
disconnect from them to Gary, the superintendent. I explained

Witnesses:

again that if He (Pat) and her (Chelsea) were not going to

be on the jobsite (unless it was bad weather) I needed
to know.

Supervisor/Crew Leader Signature

# Incident Report

Employee/Employees Involved: Pat Culler / Chelsea Mandeville

Supervisor/Crew Leader: Jeff Simpson

Date: 5/4/23

Describe the Incident:

Complaint from Superintendent at Crestwood no grass cut today.
Called Pat Culler to discuss complaint. Pat stated He or Chelsea
were there that something had come up.

Results of Incident and Action taken:

I did not pry into the reason Pat and Chelsea were absent
but did tell Pat, I understand things happen and to
let me know if He/Chelsea were not going to be
on the jobsite.

Witnesses:

_____

_____

Supervisor/Crew Leader Signature

# Incident Report

Employee/Employees Involved: Pat Cullen / Chelsea Mandolik

Supervisor/Crew Leader: JCJ Simpson

Date: 6/22/23

Describe the Incident:

I received a complaint from GM of Cortland about the 9:55 AM + text. I talked Pat at 2:04 pm and got no answer. I'll talking with a text + Pat at 2:06 pm talks Pat to call me. Pat returned my call at 3:37 pm and told me that he and Chelsea had been at the job site due to a fire up at Chelsea/Pat's. I said I was sorry that happened and explained the complaint Chelsea and Pat. They stated they didn't understand the disconnect from them to call the superintendent. I explained again that it is the (Pat) and her (Chelsea) were not going to be on the job site unless it was had weather. I wanted to know.

Results of Incident and Action taken:

Witnesses:

Supervisor/Crew Leader Signature

# Incident Report

Employees/Employees Involved: _PAT cullen / chelsea Mindelle_

Supervisor/Crew Leader: _TEDD Smythe_

Date: _5/16/23_

Describe the Incident:

_Went to Chelsea to drop off supplies. Jushua Godden &
was/really employee. Jushu Stated that Josh had been
he will at chelsea but saying that her/pat was not
to be present. Just in case no reason why. Also recived another complaint
from chelsea venkstable phone mowing. I tried to call pat
at 11:39 & 11:31, no answer. I texted pat at 11:36
about my visit and complaint. did not get a reply._

_I sent back to chelsea 5-17-23 to drop off more supplies
I told pat again to let me know if he/chelsea were not
witnesses to be on the jobsite during said week the days.
Pat said he was out 5-16-23 due to a bad teeth._

Supervisor/Crew Leader Signature

_[signature]_

Exhibit (c)

Termination

Letters



November 1, 2024

Patrick Cullen,
Hand Delivered
phathacked@proton.me

Re: Notice of termination

Mr. Cullen,

At this time, your services are no longer needed as an employee of Lakeland Cemetery Service, Inc. The company feels as though this is the last resort and for-cause termination is necessary based on multiple issues and infractions, including but not limited to the following:

    a. You have been asked countless times to inform your supervisor if you do not intend to be on site working on any given date. We have gone above and beyond to try and ensure you receive adequate leave when requested or necessary. We have asked only that you please inform your supervisor as soon as you become aware that leave is necessary and, in any event, prior to the start of your shift. We have even allowed you to communicate regarding your absences through your wife and co-worker, Chelsea Mandeville, if doing so is more convenient for you. Since September 1, you have no call/no showed at your current work location, Forest Lawn, 9/6, 9/18, 9/20, 10/1, 10/4, 10/8, and 10/24. As previously stated, we have been more than accommodating when you request leave, but it is and always has been a requirement that you correspond with your supervisor to tell him you intend to be absent. You have consistently refused to comply with even this most simple request. You have been provided multiple warnings and frequent requests from your direct supervisor regarding this issue. You have been provided counseling regarding this issue, but continue to refuse to comply. The Lakeland Company Handbook requires notification of absence and specifically states that refusal to adhere to this policy can result in disciplinary action, including termination.

    b. We have received correspondence from site owners or representatives that you have been aggressive and hostile toward them. More specifically, they have reported you using repeated profanities with these representatives, including referring to the general manager, Rachel, as a "fucking cunt" and directing similar profanities toward other partner organizations. The Lakeland Company Handbook specifically states that unwelcome harassment, fighting or threatening

activity, boisterous activity, and disrespectful conduct are prohibited activities which can result in disciplinary action, including termination of employment.

c.  Finally and most concerning, we have also received statements from certain site owners or representatives stating that you have brought weapons onto premises in addition to threatening tone and aggressive mannerisms. The Lakeland Company Handbook strictly prohibits any weapons at the work site for any reason and maintains that Lakeland is a weapon-free workplace.

For these reasons and others, you are hereby terminated for-cause. In addition, the site owners have rescinded permission for you to be on premises and you will not be allowed on site pursuant to their request.

If you are in possession of any company property, including any equipment, keys, technology, or other property belonging to or issued by the company, those items must be returned as soon as possible. You can coordinate the drop off or pick up of said items with your direct supervisor. Given that the site owners have requested you no longer come on-site, you should not drop these items off at the Forest Lawn location.

You will receive a final paycheck for time worked up to the date of this correspondence. Payment will be issued in the same manner as previous compensation unless you indicate otherwise. Your benefits after termination are outlined in your benefits enrollment package. Please inform your supervisor if your address changes so that your tax documents can be sent to the appropriate address after termination.

It is unfortunate that this situation has necessitated such action. However, the company believes this is a last resort in some instances and a result of such severe infractions that termination immediately is best for the health and safety of others on premises.

_____
DIRECT SUPERVISOR

_____
FOR LAKELAND CEMETERY SERVICES, INC.



November 1, 2024

Patrick Cullen,
Hand Delivered
phathacked@proton.me

Re: Notice of termination

Mr. Cullen,

At this time, your services are no longer needed as an employee of Lakeland Cemetery Service, Inc. The company feels as though this is the last resort and for-cause termination is necessary based on multiple issues and infractions, including but not limited to the following:

    a.  You have been asked countless times to inform your supervisor if you do not intend to be on site working on any given date. We have gone above and beyond to try and ensure you receive adequate leave when requested or necessary. We have asked only that you please inform your supervisor as soon as you become aware that leave is necessary and, in any event, prior to the start of your shift. We have even allowed you to communicate regarding your absences through your wife and co-worker, Chelsea Mandeville, if doing so is more convenient for you. Since September 1, you have no call/no showed at your current work location, Forest Lawn, 9/6, 9/18, 9/20, 10/1, 10/4, 10/8, and 10/24. As previously stated, we have been more than accommodating when you request leave, but it is and always has been a requirement that you correspond with your supervisor to tell him you intend to be absent. You have consistently refused to comply with even this most simple request. You have been provided multiple warnings and frequent requests from your direct supervisor regarding this issue. You have been provided counseling regarding this issue, but continue to refuse to comply. The Lakeland Company Handbook requires notification of absence and specifically states that refusal to adhere to this policy can result in disciplinary action, including termination.

    b.  We have received correspondence from site owners or representatives that you have been aggressive and hostile toward them. More specifically, they have reported you using repeated profanities with these representatives, including referring to the general manager, Rachel, as a "fucking cunt" and directing similar profanities toward other partner organizations. The Lakeland Company Handbook specifically states that unwelcome harassment, fighting or threatening

activity, boisterous activity, and disrespectful conduct are prohibited activities which can result in disciplinary action, including termination of employment.

c.   Finally and most concerning, we have also received statements from certain site owners or representatives stating that you have brought weapons onto premises in addition to threatening tone and aggressive mannerisms. The Lakeland Company Handbook strictly prohibits any weapons at the work site for any reason and maintains that Lakeland is a weapon-free workplace.

For these reasons and others, you are hereby terminated for-cause. In addition, the site owners have rescinded permission for you to be on premises and you will not be allowed on site pursuant to their request.

If you are in possession of any company property, including any equipment, keys, technology, or other property belonging to or issued by the company, those items must be returned as soon as possible. You can coordinate the drop off or pick up of said items with your direct supervisor. Given that the site owners have requested you no longer come on-site, you should not drop these items off at the Forest Lawn location.

You will receive a final paycheck for time worked up to the date of this correspondence. Payment will be issued in the same manner as previous compensation unless you indicate otherwise. Your benefits after termination are outlined in your benefits enrollment package. Please inform your supervisor if your address changes so that your tax documents can be sent to the appropriate address after termination.

It is unfortunate that this situation has necessitated such action. However, the company believes this is a last resort in some instances and a result of such severe infractions that termination immediately is best for the health and safety of others on premises.

DIRECT SUPERVISOR

FOR LAKELAND CEMETERY SERVICES, INC.

Exhibit (D)

Communications concerning
adverse actions

**ub** Request for Dialogue on Reasonable Accommodations and Workplace Conduct
**ect**

**o:** [ldono@everstorypartners.com <ldono@everstorypartners.com>,
jeff.black@everstorypartners.com <jeff.black@everstorypartners.com>,
jblac1@everstorypartners.com <jblac1@everstorypartners.com>, Michele Stone
<mston1@everstorypartners.com>]

**ro** Chelsea Mandeville <ckayem@yahoo.com>
**m**

**at** Tue, Sep 24, 2024 at 10:08 AM
**:**

Dear Ms. Donohue and Everstory Partners Staff,

In the likely event that you are pressed for time, please see the TL;DR at the
end of this email.

Good morning and thank you for taking the time to read this communication
I am writing to bring to your attention circumstances that have significantly
impacted my husband and me. These issues stem from actions taken by
several of Everstory Partners' employees. My goal is to engage in a
transparent dialogue to find an amicable resolution internally rather than
pursuing formal complaints or legal action.

Overview of Issues:

My husband, Patrick Cullen, has been servicing one of Everstory's Southern
locations for nearly 15 years, and I have been doing so for 4 years. We have
always maintained amicable relationships with your staff through various
changes in people, policy, and management. Unfortunately, over the past
year, we have faced several challenges, which we believe could have been
exacerbated by our disputes with our employer and potentially Everstory's
involvement.

I have systemic lupus, a condition that necessitates reasonable
accommodations under the Americans with Disabilities Act (ADA). These
accommodations, uncontested for almost 2 years, include working hours
beyond the typical 8 AM to 4:30 PM schedule. This adjustment allows me to
manage my condition effectively while fulfilling my job responsibilities.

Issues of Concern:

. Interference with Reasonable Accommodations:
  - An Everstory Regional Manager, Rachel Davenport, approached us
regarding the service contract and indicated that services would be brought
in-house." Due to being unauthorized to discuss these topics, we felt
obligated to provide her with our CEO's contact information, despite ongoing
disputes with our employer. Shortly after this, we were informed that we
could no longer be present at the cemetery past 5:00 PM. This change
interferes with my previously granted accommodation without providing
valid reasons or engaging in an interactive process.
  - The ADA mandates that employers, including third parties that control
working conditions, must provide reasonable accommodations unless doing
so would cause undue hardship (42 U.S.C. § 12112(b)(5)(A)).

. Lack of Interactive Process:
  - When I reached out to understand the new restrictions, I was met with
resistance. Gary Crowe refused to discuss the matter further, and Rachel
Davenport cited false claims about me threatening a lawsuit. This lack of
engagement violates the ADA's requirement for an interactive process.
  - The ADA requires an interactive process to identify and implement
reasonable accommodations (42 U.S.C. § 12203(a)).

. Hostile Work Environment:
  - Following these interactions, we experienced hostile behavior, including
being followed by staff members and false statements being spread about
us. This behavior has created a hostile work environment, leading us to
transfer locations, only for the hostility to follow us.
  - A hostile work environment occurs when an employee is subjected to
severe or pervasive harassment that creates an intimidating, hostile, or
offensive work environment.

. Slander (Defamation):
  - Gary Crowe's false statements about me threatening a lawsuit could
constitute slander, especially if they have caused harm to my reputation or
employment.

. Conspiracy to Harm Employment:

representatives could be seen as a conspiracy to harm my employment. This claim would fall under tort law and involves proving elements of a conspiracy, such as an agreement between parties to undertake actions that result in harm to my employment.

Summary of Issues:

. Failure to Provide Reasonable Accommodation:
  - Everstory's refusal to allow me to work past 5:00 PM and the lack of engagement in the interactive process obstruct the accommodation process, potentially violating ADA provisions.

. Failure to Engage in the Interactive Process:
  - The refusal to discuss or consider my accommodation needs violates the ADA's requirement for an interactive process.

. Hostile Work Environment:
  - The actions of Everstory representatives, including following me and spreading false statements, contribute to a hostile work environment.

TL;DR:

Perceived Violations: Everstory's refusal to allow me to work past 5:00 PM, failure to engage in the interactive process, and hostile actions may constitute violations of the ADA.
Hostile Work Environment: Creating a hostile work environment through actions and false statements.

We are seeking a transparent and productive dialogue to resolve these issues internally rather than pursuing legal action or filing formal complaints with the EEOC/DOJ.

Attached, you will find the audio recordings of Rachel Davenport and Gary Crowe mentioned above. We also include the phone call with Michelle Stone to demonstrate the issues we have faced. Please reach out if you or your legal team would like to discuss and obtain the rest of the communication attempts to your staff. If you decide against taking this opportunity, please

appropriate channels.

We will consider the company's response to be one of disinterest if we do not receive an email or phone call (voicemail if missed) by Monday, September 30, 2024. It is generally easier to reach me via email or text prior to calling so that I can be expecting it.

Thank you for your time.

Respectfully,

Chelsea Mandeville
(256)-525-5932
ckayem@yahoo.com
400 W Blue Mountain Road
Anniston, AL
36201


Yahoo Mail: Search, Organize, Conquer

Exhibit (E):

Communications showing engagement in (ACA) protected activities

**Subject:**    If you are curious and compliant Mr. Gibson..
**From:**    "Phat" <phathacked@proton.me>
**Date:**    07/17/2024, 9:09 AM
**To:**    "Jgibson@paychex.com" <Jgibson@paychex.com>

My name is Patrick Cullen, my wife is Chelsea Mandeville and we have experienced a whole lot of bullshit with the tools you provide employers while having no aide for employees. I don't have any faith or expectation that you'll read this nor reply if you do.

Spring of 23 we by chance of Obamacare found out our employer offered benefits after 15 years. Seeking info related to the ACA Marketplace we were instead provided a 3$/hr raise and offered fringe benefits by the CEO. Also provided a handbook used as defensive reason for destroying our car by hauling supply required for the job for 8 years as it says not to use personal vehicles but no company one ever provided, in that handbook was holiday pay and vacation pay, never got that before either.

Long story short the reply to most inquiries was to point the finger at Paychex. Health insurance was used as retaliatory weapon by stating Chelseas income was 35k salary when it was 21k hourly. Why? To raise the 9.12% ceiling of ACA. Then he kept her refund. Myself never got the insurance because somehow between Flock and UHC my birthday was falsified.

Seeking what happened an employee of UHC and Paychex revealed at risk to their jobs this info, recorded on audio. We also blew the whistle to OSHA, leading to a pending ALJ case.

Now I personally think the audio is enough but Judges like paper. I have requested multiple times from Paychex through both HIPPA and pro se forms my information related to the situation. I am ignored.

Another thing is I keep getting notifications about 401k withdraw and Paystubs that don't show up for a week or longer. Inquire about it with your support leads to confusion from your employees before starting the "your not the client" shit.

I've went to the EBSA, Hhs who also couldn't obtain from employer nor Paychex/UHC.

So Mr. Gibson I kindly ask you to give me this information. Recently our federal tax was tripled and we had to opt out of withholding, making combined 46k a year you probably won't understand how much that effect is and now we are going through the feeling of fear from IRS as to why we don't have federal taken out.


I'm out of ideas so I figured why not try with the CEO.

in the 401(k) system, a Distribution notice (informing the participant of their eligibility to request a rollover distribution from their vested account balance) will be generated and sent to the employee if they have an account balance remaining in the plan.

Your company sponsored retirement plan does have a Profit Sharing option attached to the plan and is run at the discretion of your Employer. As one of the leading 401(k) record-keepers in the industry, we see clients manage their plans in a number of different ways. I cannot speak to any specifics of your personal situation as this is a decision that was made by your employer.

Where are you seeing the code for catch up contributions? I reviewed your most recent pay stub and only see your pre-tax and Roth employee deferrals. I included a screen shot of this for your review:

| Cullen, Patrick K 297 | | | | | |
|---|---|---|---|---|---|
| Regular | 19.0000 | 76.2500 | 1,448.75 | | Social Security |
| Overtime | 28.5000 | 2.7500 | 78.38 | | Medicare |
| | | | | | AL Income Tax |
| EMPLOYEE TOTAL | | 79.0000 | 1,527.13 | | |
| EMPLOYEE YTD TOTAL | | | | | |
| Regular | | 662.2500 | 12,201.25 | | Social Security |
| Overtime | | 31.7500 | 889.14 | | Medicare |
| | | | | | Fed Income Tax |
| | | | | | AL Income Tax |
| EMPLOYEE YTD TOTAL | | 694.0000 | 13,090.39 | | |

I will look into your automatic enrollment concerns and follow up with you later today.

Please let me know if you have any questions and I will be happy to follow up with you. I appreciate the opportunity to assist you with these concerns and thank you for your patience during this very busy time of year!

Sincerely,

**Angela Mockbee**
Values Champion 
**401(k)/S125 Client Relations Service Partner**
Phone: 1-800-472-0072

Your experience and satisfaction matter to us. Let my manager know how I'm doing.
**Eric DeAveiro** | 800-472-0072 ext. 5250651 | edeaveiro@paychex.com

**PAYCHEX**

HR | Payroll | Benefits | Insurance

The Power of Simplicity

**From:** Phat <phathacked@proton.me>
**Sent:** Tuesday, July 23, 2024 2:41 PM
**To:** Mockbee, Angela M <amockbee@paychex.com>; irfuubuu@aol.com

**Concern: Patrick Cullen**

---

☆  WE  **Williams, Candice E** <cwilliams10@paychex.com> to Me <phathacked@proton.me> and...  **7/17/2024** ↩ ⓘ ⋮

**Subject:** Concern: Patrick Cullen
**From:** "Williams, Candice E" <cwilliams10@paychex.com>
**Date:** 7/17/2024, 10:31 AM
**To:** "phathacked@proton.me" <phathacked@proton.me>
**CC:** "Williams, Candice E" <cwilliams10@paychex.com>

Good morning,

I am reaching out from the President's office about the multiple concerns you have brought to our attention. Mr. John Gibson informed me of your concern, and I wanted to reach out to you for more information. If you can provide me with your employer's name, number, and location, that would help me better aid you in these matters. Please feel free to reach out to me to discuss this.

I look forward to connecting with you.

Thank you for your partnership.

# Candice E. Williams

Client Relations Advocate | President's Office
Phone: 866-804-5491 Ext. 5201153

Your experience and satisfaction matter to us. Let my manager know how I'm doing.
Julia Monoski | 866-804-5491 Ext 5201172 | jmonoski@paychex.com



HR | Payroll | Benefits | Insurance

The Power of Simplicity

The information contained in this message may be privileged, confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message

---

☆  ME  **Me** <phathacked@proton.me> to C Man <manc90937@gmail.com>    7/17/2024 ↩ ⓘ ⋮

In Labels/paychexx

**Subject:** Fw: Concern: Patrick Cullen
**From:** "Phat" <phathacked@proton.me>
**Date:** 7/17/2024, 2:28 PM
**To:** "C Man" <manc90937@gmail.com>

Sent from Proton Mail Android

☆  ME   **Me** <phathacked@proton.me> to cwilliams10@paychex.com                           📎 7/17/2024 ◀ ⓘ ⋮

**Subject:** Re: Concern: Patrick Cullen
**From:** "Phat" <phathacked@proton.me>
**Date:** 7/17/2024, 10:07 PM
**To:** "cwilliams10@paychex.com" <cwilliams10@paychex.com>

Forgive me for my hesitation but every single time someone reached out or request my employers information I and my spouse have faced retaliatory action, some of it is very impressive that walks a fine line between illegal and not, though with context much would find it illegal.

Exactly how could you help me? Feel free to request details but I am not going to allow the same thing to keep repeating itself, the pattern of retaliatory action has coat us quite a lot of suffering. My faith is destroyed in anyone actually helping. The fact is I have sent both HIPPA and Pro Se forms in regards to the paper work I seek and have been ignored, hung up on and more by Paychex employees. He (CEO) even pointed to an employee of yours as the plan administrator of health plan while he defrauded and abused us for simply needing information and fighting for the policy they wrote in regards to the handbook and peers getting that paid time off.

Please let me know how you could possibly help other than giving me my requested documents that were used in fraudulent activity that you don't need the Employer for, it also seems to be that corporate policy trumps federal law.

one attachment ⬇ 



**Picture (Device Independent Bitmap) 1.jpg**
size unknown

👁 ⬇ 🔍 ⋮

☆  WE   **Williams, Candice E** <cwilliams10@paychex.com> to Me <phathacked@proton.me> and...  7/18/2024 ◀ ⓘ ⋮

**Subject:** Fw: RE: 401(k) Customer Service [ ref:!00D3006M6H.!500WP08ZZSx:ref ]
**From:** "Phat" <phathacked@proton.me>
**Date:** 8/1/2024, 7:48 PM
**To:** "Jgibson@paychex.com" <Jgibson@paychex.com>, "Williams, Candice E" <cwilliams10@paychex.com>
**CC:** "Edeaveiro@paychex.com" <Edeaveiro@paychex.com>
**BCC:** "mckee.colleen" <mckee.colleen@dol.gov>, "Mmucci@paychex.com" <Mmucci@paychex.com>

As seen below the continued refusal of my documents. I once again remind you I have submitted pro se representation and HIPPA to Paychex.

At the very least kicking everyone off besides highly compensated individuals on a profit sharing plan literally a week before and month at earliest from the ONLY requirement to receive a match, if this employer has been doing the discretionary match and you, Paychex have been made aware of it..is this really the response ?

I have been an employee for over a decade and I find it incredible that the first year I did 401k is also the first year I am labeled terminated a week before the required date on Paychex, never before though. As I stated in my initial email to "CEO" Gibson I would share with you how your tools are being used in very clear violations with intent and how you as a company would act as a protector.

There you go. Corporate policy takes priority over law.

To reiterate:

1. Catch up codes for 50+ yr Olds on my info stating "ongoing".

2. Kick off first time ever by termination label a week before match requirement in 10+ yrs in the first year I did 401k.

3. Auto enrollment this year, never before though.

4. Phantom notifications about withdrawal and Paystubs, some from months ago.

Wise response to these issues by continuing the "not the client" and "get a lawyer"

☆ ME **McKee, Colleen - EBSA** <McKee.Colleen@dol.gov> to Me <phathacked@proton.me>    8/1/2024 ◀ (i) ⋮

In Folders/guberment

**Subject:** Automatic reply: RE: 401(k) Customer Service [ ref:!00D3006M6H.!500WP08ZZSx:ref ]
**From:** "McKee, Colleen - EBSA" <McKee.Colleen@dol.gov>
**Date:** 8/1/2024, 7:48 PM
**To:** "Phat" <phathacked@proton.me>

☆ ME **Me** <phathacked@proton.me> to Jgibson@paychex.com and Williams, Candic...    February 24 ◀◀ (i) ⋮

In Labels/paychexx

**Subject:** Fw: RE: 401(k) Customer Service [ ref:!00D3006M6H.!500WP08ZZSx:ref ]
**From:** "Phat" <phathacked@proton.me>
**Date:** 2/24/2025, 5:39 AM
**To:** "Jgibson@paychex.com" <Jgibson@paychex.com>, "Williams, Candice E"
<cwilliams10@paychex.com>

attachments ⬇ 

    **image001.gif**

I requested the SPD o

have tasks for open e

am ineligible as well. /

enrollment my birthda

wrong and I have cato

for 401k that applies t

Please help

**Patrick Cullen**

In case you are confus

never authorize me to

violated. The blatant c

is beyond evident

**Subject:** RE: 401(k) Customer Service [ ref:!00D3006M6H.!500WP08ZZSx:ref ]
**From:** "Mockbee, Angela M" <amockbee@paychex.com>
**Date:** 7/25/2024, 12:03 PM
**To:** "Phat" <phathacked@proton.me>, "irfuubuu@aol.com" <irfuubuu@aol.com>

Hello Patrick,

Thnak you for your email and I will be happy to provide you with some guidance on your questions today!

Are you able to provide me with a copy or a screen shot of the withdrawal notification you mentioned below? In general, once an employee's employment status is marked as terminated in the 401(k) system, a Distribution notice (infoorming the partiicipant of their eligibility to request a rollover distribution from their vested account balance) will be generated and sent to the employee if they have an account balance remaining in the plan.

Your company sponsored retirement plan does have a Profit Sharing option attached to the plan and is run at the discretion of your Employer. As one of the leading 401(k) record-keepers in the industry, we see clients manage their plans in a number of different ways. I cannot speak to any specifics of your personal situation as this is a decision that was made by your employer.

Where are you seeing the code for catch up contributions? I reviewed your most recent pay stub and only see your pre-tax and Roth employee deferrals. I included a screen shot of this for your review:

| Cullen, Patrick K 297 | | | | |
|---|---|---|---|---|
| Regular | 19.0000 | 76.2500 | 1,448.75 | Social Security |
| Overtime | 26.5000 | 2.7500 | 78.38 | Medicare |
| | | | | AL Income Tax |
| EMPLOYEE TOTAL | | 79.0000 | 1,527.13 | |
| EMPLOYEE YTD TOTAL | | | | |
| Regular | | 662.2500 | 12,201.25 | Social Security |
| Overtime | | 31.7500 | 889.14 | Medicare |
| | | | | Fed Income Tax |
| | | | | AL Income Tax |
| EMPLOYEE YTD TOTAL | | 694.0000 | 13,090.39 | |

I will look into your automatic enrollment concerns and follow up with you later today.

Please let me know if you have any questions and I will be happy to follow up with you. I appreciate the opportunity to assist you with these concerns and thank you for your patience during this very busy time of year!

Sincerely,

**Angela Mockbee**
Values Champion
**401(k)/S125 Client Relations Service Partner**
Phone: 1-800-472-0072

Your experience and satisfaction matter to us. Let my manager know how I'm doing.
**Eric DeAveiro** | 800-472-0072 ext. 5250651 | edeaveiro@paychex.com



## Steffany Williams

Today at 16:43

Good Afternoon,

Please tell Employee t
their employer for ass

They are not an autho

client-facing only


Thank you

Paychex recognizes y

Brokers and truly appr

to be an essential bus

company.

The company is responsible for re

to ensure accuracy of covered emp

05/07/2023 - Ongoing

# Deductions

## PX401 EEPRE

05/07/2023 - Ongoing

## PXROTH 401 EEPO

05/07/2023 - Ongoing

**Subject:** RE: 401(k) Customer Service [ ref:I00D3006M6H.l500WP08ZZSx:ref ]
**From:** "Mockbee, Angela M" <amockbee@paychex.com>
**Date:** 8/1/2024, 1:51 PM
**To:** "Phat" <phathacked@proton.me>, "irfuubuu@aol.com" <irfuubuu@aol.com>
**CC:** "Williams, Candice E" <cwilliams10@paychex.com>

Hello Patrick,

I hope this email finds you doing well and you are having a great week so far.

I wanted to follow up to ensure you received the information below. I also want to let you know that Paychex has continued to review your 401(k) concerns. However, because you are not an authorized contact on your employer's sponsored account, Paychex cannot provide you with information about the account beyond assisting you with accessing your own individual Paychex Flex Account.

Please direct any remaining concerns to your employer, as we cannot discuss your employer's account with you, unless you are added as an authorized plan contact. Alternatively, your attorney can direct any requests for records about the account via a subpoena to Paychex' Legal Department located at 911 Panorama Trail South, Rochester NY 14625.

Sincerely,

**Angela Mockbee**
Values Champion
**401(k)/S125 Client Relations Service Partner**
Phone: 1-800-472-0072

Your experience and satisfaction matter to us. Let my manager know how I'm doing.
**Eric DeAveiro** | 800-472-0072 ext. 5250651 | edeaveiro@paychex.com



HR | Payroll | Benefits | Insurance

The Power of Simplicity


**From:** Mockbee, Angela M
**Sent:** Thursday, July 25, 2024 1:03 PM
**To:** Phat <phathacked@proton.me>; irfuubuu@aol.com
**Subject:** RE: 401(k) Customer Service [ ref:I00D3006M6H.l500WP08ZZSx:ref ]

Hello Patrick,

Thnak you for your email and I will be happy to provide you with some guidance on your questions today!

Are you able to provide me with a copy or a screen shot of the withdrawal notification you mentioned below? In general, once an employee's employment status is marked as terminated in the 401(k) system, a Distribution notice (infoorming the partiicipant of their eligibility to

eville and
n
ountain Rd





UNITED STATES POSTAL SERVICE®

Click-N-Ship®

P

PRIORITY MAIL®

04/07/2025
usps.com
$10.51
US POSTAGE
Cubic

U.S. POSTAGE PAID

Mailed from 36201    82093437507S544

9405 5301 0935 5130 6248 52 0089 6004 0003 5203

04/09/2025
RDC 03    C006

CHELSEA MANDEVILLE
400 W BLUE MOUNTAIN RD
ANNISTON AL 36201-2555

USPS TRACKING #

9405 5301 0935 5130 6248 52

HUGO L BLACK U.S. DISTRICT COURTHOUSE
CLERK OF THE DISTRICT COURT-U.S. DISTRI
1729 5TH AVE N
BIRMINGHAM AL 35203-2022

APR 09 2025
NORTHERN DISTRICT OF ALABAMA
UNITED STATES DISTRICT COURT
SECURITY