FILED

2026 Jan-07 AM 09:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| CHELSEA KAYE MANDEVILLE | ) | |
| and | ) | |
| PATRICK KEITH CULLEN, | ) | |
| PLAINTIFFS, | ) | |
| v. | ) | |
| LAKELAND CEMETERY | ) | Case No. 1:25-cv-00523-CLM |
| SERVICES, INC., | ) | |
| And CRAIG HAUPT, individually | ) | |
| and in his capacity as Plan | ) | |
| Administrator, | ) | |
| DEFENDANTS. | | |

January 4, 2026

**FIRST AMENDED COMPLAINT JURY TRIAL DEMANDED**

Preliminary Statement / Relief Sought (brief)

Plaintiffs Chelsea Kaye Mandeville and Patrick Keith Cullen bring this action against Defendants Lakeland Cemetery Services, Inc. and Craig Haupt for unlawful retaliation in violation of the Affordable Care Act ("ACA") and the

Employee Retirement Income Security Act of 1974 ("ERISA"), breach of fiduciary duty, and related claims arising from their employment and from their repeated complaints to EBSA, OSHA, and other agencies about ACA/ERISA violations. This pleading cures previously identified deficiencies by specifying, for each count, the precise factual paragraphs relied upon to establish each element against each Defendant, without general incorporation, and by tying each claim to Plaintiffs' EBSA and OSHA whistleblower activities through specific dates and paragraph references. Plaintiffs seek declaratory relief, reinstatement or front pay, back pay, compensatory and punitive damages, statutory penalties, and injunctive relief.

Jurisdiction and Venue

1. This Court has subject-matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 218c, and 29 U.S.C. § 1132, and jurisdiction over the ACA whistleblower claims is also proper under 29 U.S.C. § 218c(b)(2)(A) because Plaintiffs filed ACA whistleblower complaints with OSHA and more than 210 days elapsed without a final decision by the Secretary of Labor.

2. The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a), as they arise from the same nucleus of operative facts.

3. Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in Calhoun County and Etowah County, Alabama.

Parties

4. **Plaintiff Chelsea Kaye Mandeville** ("Ms. Mandeville") is an adult individual residing in Anniston, Calhoun County, Alabama. She was employed by Defendant Lakeland from approximately June 2021 until her termination on November 1, 2024, and was eligible to participate in Lakeland's group health benefit plan.

5. **Plaintiff Patrick Keith Cullen** ("Mr. Cullen") is an adult individual residing in Anniston, Calhoun County, Alabama. He was employed by Defendant Lakeland for approximately fifteen years until his termination on November 1, 2024, and was likewise eligible to participate in Lakeland's employee benefit plans.

6. **Defendant Lakeland Cemetery Services, Inc.** ("Lakeland") is a Wisconsin corporation doing business in Alabama. At all relevant times, Lakeland was

3

Plaintiffs' "employer" within the meaning of 29 U.S.C. § 218c and 29

U.S.C. § 1002(5) and was a Large Employer subject to the ACA.

7. **Defendant Craig Haupt** ("Haupt") is an individual who served as the Chief

Executive Officer of Lakeland and as the designated Plan Administrator of

Lakeland's group health plan ("the Plan"). As Plan Administrator, Haupt

was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(16)(A)

and § 1002(21)(A).

Definitions and Instructions on Paragraph Citations

8. **Definitions:** The following terms shall have the designated meanings: a.

**"ACA"** refers to the Patient Protection and Affordable Care Act. b.

**"APTC"** refers to Advance Premium Tax Credits available through the

Health Insurance Marketplace. c. **"EBSA"** refers to the Employee Benefits

Security Administration. d. **"ERISA"** refers to the Employee Retirement

Income Security Act of 1974. e. **"OSHA"** refers to the Occupational Safety

and Health Administration. f. **"Plan"** refers to the group health benefit plan

sponsored by Lakeland. g. **"SPD"** refers to the Summary Plan Description.

9. **Pleading Structure:** To ensure clarity and cure previously noted

deficiencies, each Count in this Complaint identifies the specific numbered

paragraphs from the "Statement of Facts" section that support each element

4

of the claim against each Defendant. No Count incorporates the entire

factual background by general reference.

Statement of Facts — Numbered Paragraphs

## A. Background and Medical Conditions

10. Plaintiff Chelsea Kaye Mandeville was employed by Defendant Lakeland as

a Mower/Landscaper from approximately June 2021 until her termination on

November 1, 2024.

11. Plaintiff Patrick Keith Cullen was employed by Defendant Lakeland for

approximately fifteen (15) years, most recently serving as Crew Leader,

until his termination on November 1, 2024.

12. Prior to the events described herein, both Plaintiffs had satisfactory or

exemplary employment records with no documented disciplinary issues.

13. Ms. Mandeville suffers from Systemic Lupus Erythematosus ("Lupus"), a

chronic autoimmune condition.

14. Mr. Cullen suffers from Stage 3 Hurley Hidradenitis Suppurativa ("HS"), a

severe chronic inflammatory skin condition that is managed with weekly

Humira injections.

## B. Protected Activity and Requests for Plan Information

15. On or about March 21, 2023, Ms. Mandeville sent a written request to CEO Haupt and Supervisor Jeff Simpson for the SPD and ACA-required documentation for Lakeland's group health plan.

16. The statutory 30-day deadline for Plan Administrator Haupt to furnish the requested documents expired on or about April 21, 2023.

17. On or about April 26, 2023, Ms. Mandeville informed Supervisor Jeff Simpson that Plaintiffs were relying on Marketplace APTC and that Lakeland's failure to inform them of employer-sponsored coverage options exposed them to potential tax penalties.

18. On or about May 2, 2023, Ms. Mandeville met with CEO Haupt, reiterated her request for the SPD, and raised concerns that ACA violations affecting Plaintiffs' APTC eligibility and access to employer coverage were occurring.

19. Between May 2023 and November 2023, Plaintiffs contacted EBSA on multiple occasions by telephone and web inquiry to report Defendants' suspected violations of ERISA and the ACA, including misclassification, denial of benefits, unaffordable employer coverage, and withholding of plan documents.

6

20. These EBSA contacts included inquiries opened in May, June, and September 2023, which EBSA logged and pursued through its Atlanta and Chicago Regional Offices.

20A. Between May and November 2023, EBSA opened multiple inquiries in response to Plaintiffs' complaints. On or about June 27, 2023, an EBSA Benefits Advisor emailed Haupt on Plaintiffs' behalf requesting that Lakeland provide the SPD and information about Plaintiffs' eligibility for Lakeland's health, welfare, and retirement benefits. On or about June 29, 2023, Haupt responded to EBSA and sent certain benefit documents he stated had previously been provided to Ms. Mandeville, but Plaintiffs still did not receive the SPD.

20B. In communications with EBSA during July 2023, EBSA records reflected that Ms. Mandeville's actual annual wages were approximately $20,000, while the benefits enrollment platform used a higher annual salary figure of about $33,000 in connection with her health coverage, inflating the apparent affordability of coverage and contributing to making the premiums unaffordable for her household.

20C. In their EBSA contacts through August–November 2023, Plaintiffs reported that Defendants (a) continued to withhold the SPD and other plan documents despite written requests; (b) had misclassified them as seasonal employees to avoid offering benefits; (c) refused to cancel or adjust Ms. Mandeville's unaffordable

7

health coverage even after a qualifying life event and a three-way call with the carrier; and (d) were using a small-group SHOP arrangement despite representing higher employee counts to other agencies. Plaintiffs also informed EBSA that they believed Defendants were retaliating against them for raising these ACA and ERISA concerns.

20D. Between August and November 2023, Plaintiffs repeatedly contacted EBSA to follow up on their complaints, requested to speak with supervisors in the Chicago Regional Office, and expressed concern that no formal investigation had been opened despite the ongoing SPD non-production, misclassification, and premium-affordability issues they had reported.

21. On or about June 30, 2023, Ms. Mandeville again raised the need for ACA compliance and the SPD with Haupt.

22. Haupt repeatedly misrepresented the identity of the Plan Administrator, stating that it was Paychex, Lakeland's payroll and benefits vendor.

23. On September 29, 2023, Ms. Mandeville filed a whistleblower complaint with OSHA alleging that Defendants retaliated against her for engaging in ACA-protected activity.

24. On October 5, 2023, Mr. Cullen filed his own OSHA whistleblower complaint alleging retaliation for his ACA-protected activity and for his association with Ms. Mandeville's complaints.

24A. After OSHA opened Plaintiffs' ACA whistleblower matters and notified Lakeland of Ms. Mandeville's complaint, on or about October 16, 2023, Plaintiffs allege, based on benefits and Marketplace records, that Lakeland submitted to UnitedHealthcare and the federal Marketplace a waiver form for Ms. Mandeville that was dated August 7, 2023, even though Plaintiffs contend it was not actually submitted until October 16, 2023, and that premiums for her coverage continued to be deducted from her pay through at least October 20, 2023.

25. On October 31, 2024, Ms. Mandeville displayed a whiteboard at her worksite reminding coworkers of their federal anti-retaliation rights.

## C. Pattern of Adverse Employment Actions

26. On May 4 and May 8, 2023, within days of Ms. Mandeville's protected disclosures to management, Defendants issued her the first disciplinary write-ups of her employment.

27. In June and July 2023, Defendants obstructed Plaintiffs' access to health coverage by maintaining incorrect date-of-birth information for Mr. Cullen

9

in enrollment records and by refusing to correct unaffordable premium tiers for Ms. Mandeville.

28. In July 2023, after the coverage issues described in Paragraph 27, Mr. Cullen lost access to his weekly Humira injections, causing a severe flare of his HS that left him largely bedridden.

29. Defendants denied Plaintiffs' request for paid medical leave for this emergency and required them to use accrued vacation time instead.

30. During July and August 2023, a part-time coworker, Justin Gaddison, received payments labeled as "bonus" on his pay stubs while he was absent from work due to surgery.

31. In August 2023, while Plaintiffs were on pre-approved vacation leave, Defendants created three unsigned "incident reports" regarding their absences.

32. Plaintiffs were not informed of these reports at the time, were not shown the reports, and were not asked to sign them when they were created.

33. On or about November 9, 2023, after Plaintiffs had repeatedly reported ACA and ERISA concerns to EBSA and OSHA and after Ms. Mandeville filed additional discrimination charges with the EEOC in late October 2023,

Lakeland withdrew Ms. Mandeville's entire paycheck from her bank

account without notice over a long holiday weekend, causing an overdraft of

more than $1,300.

34. Throughout 2024, Defendants increased Plaintiffs' workload by refusing to

hire replacement crew members, reduced Mr. Cullen's authority, and

installed surveillance cameras directed at Plaintiffs' worksites.

35. In early July 2024, Defendants revoked Ms. Mandeville's longstanding

flexible work schedule accommodation that she used to manage her Lupus.

36. On or about August 8, 2024, other employees told Lakeland management

that Ms. Mandeville had "threatened a lawsuit."

37. Lakeland management, including Haupt, refused to listen to or consider

exculpatory audio recordings that Ms. Mandeville offered, which she

contends disproved those statements.

38. Defendants then used these accusations as a basis to impose new property-

access restrictions on Ms. Mandeville and to require her transfer to a

different worksite.

39. The transfer in September 2024 which was offered and only accepted by

Plaintiffs due to the open hostility they experienced without assistance in

mitigating the circumstances from Lakeland resulted in reduced duties, reduced hours, and an increased travel distance for Ms. Mandeville.

40. After the transfer, Defendants removed Plaintiffs from a worksite when they attempted to make up missed work hours due to rain, even though making up rain hours had previously been permitted without objection or discipline.

41. On November 1, 2024, one day after Ms. Mandeville displayed the anti-retaliation whiteboard, Defendants terminated the employment of both Plaintiffs.

42. The termination letters cited, in part, the previously undisclosed August 2023 "incident reports" as a reason for the terminations.

## D. Administrative Proceedings and Damages

43. Plaintiffs filed ACA whistleblower complaints with OSHA on September 29, 2023 (by Ms. Mandeville) and October 5, 2023 (by Mr. Cullen), and OSHA accepted those complaints for investigation. More than 210 days have elapsed since those filings without a final decision by the Secretary of Labor, and Plaintiffs therefore exercise their right under 29 U.S.C. § 218c(b)(2)(A) to bring this action de novo in federal district court.

44. Plan Administrator Haupt failed to provide the requested SPD for a period of at least 507 days, from the expiration of the statutory deadline on or about April 21, 2023, through at least September 9, 2024, as reflected in Plaintiffs' administrative filings and EBSA correspondence.

45. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages, including but not limited to lost wages, lost benefits, the cost of medical care (including Mr. Cullen's Humira medication at approximately $6,000 per month without insurance), financial hardship, and severe emotional distress.

**Count I — ACA Whistleblower Retaliation (29 U.S.C. § 218c)**

**Against Defendants Lakeland and Haupt**

46. Section 1558 of the ACA, 29 U.S.C. § 218c, prohibits an employer from retaliating against an employee for engaging in protected activity, including receiving a premium tax credit, providing information to a federal agency regarding a violation of the ACA (including through OSHA whistleblower complaints and EBSA/HHS benefits inquiries), or objecting to any activity the employee reasonably believes is a violation of the ACA.

47. Plaintiffs engaged in protected activity as defined under the ACA. The factual bases for this element are set forth in Paragraphs 15, 17, 18, 19, 20, 20A, 20B, 20C, 20D, 21, 23, 24, 24A, and 25.

48. Defendants Lakeland and Haupt had knowledge of Plaintiffs' protected activity. The factual bases for this element are set forth in Paragraphs 15, 17, 18, 20A, 20D, 21, 23, 24, 24A, and 25.

49. Following Plaintiffs' protected activities, Defendants subjected them to a series of adverse employment actions, as described in the paragraphs cited below. a. **Against Defendant Lakeland:** The adverse actions taken by Defendant Lakeland are described in Paragraphs 26, 27, 29, 31, 33, 34, 35, 38, 39, 40, and 41. b. **Against Defendant Haupt:** The adverse actions effectuated by Defendant Haupt in his capacity as CEO are described in Paragraphs 26, 27, 29, 33, 35, 37, 38, and 41.

50. Plaintiffs' protected activity was a contributing factor in Defendants' decisions to take these adverse actions. Causation is shown by the close temporal proximity between the protected acts and the adverse actions and by evidence of pretext. a. **Temporal Proximity:** Adverse actions followed protected activities, often within days, as described in Paragraphs 17, 18, 19, 20A, 20C, 20D, 21, 23, 24, 24A, 26, 33, and 41. b. **Pretext:** Defendants'

stated reasons for their actions were pretextual. The factual bases for this

element include disparate treatment, the use of undisclosed "incident

reports," alleged manipulation of benefits and waiver paperwork after

Plaintiffs' EBSA and OSHA complaints, and the refusal to consider

exculpatory evidence, as set forth in Paragraphs 20B, 20C, 30, 31, 32, 33,

37, 40, and 42.

51. As a direct and proximate result of the retaliatory actions taken by

Defendants Lakeland and Haupt, Plaintiffs suffered damages as set forth in

Paragraph 45.

## Count II — ERISA § 510 Retaliation and Interference (29 U.S.C. § 1140)

52. Section 510 of ERISA, 29 U.S.C. § 1140, makes it unlawful for any person

to discriminate against a participant for exercising any right to which they

are entitled under an employee benefit plan or for the purpose of interfering

with the attainment of any right under the plan.

53. Plaintiffs were, at all relevant times, participants in the Plan sponsored by

Lakeland, an employee benefit plan governed by ERISA. This is supported

by the facts in Paragraphs 6, 7, and 15.

54. Plaintiffs engaged in protected activity under ERISA by requesting plan

documents and by reporting suspected ERISA violations to EBSA. The

factual bases for this element are set forth in Paragraphs 15, 19, 20, 20A, 20B, 20C, 20D, and 21.

**As to Defendant Lakeland**

55. Defendant Lakeland, acting through its agents including CEO Haupt, took adverse employment actions against Plaintiffs with the specific intent to retaliate against them for exercising their ERISA rights and to interfere with their attainment of benefits under the Plan, including by obstructing access to affordable coverage, resisting or delaying cancellation of unaffordable coverage, and failing to correct known enrollment and plan-document issues, as described in the paragraphs cited below.

56. The adverse employment actions and interference with benefits undertaken by Defendant Lakeland are set forth in Paragraphs 26, 27, 28, 29, 31, 33, 34, 35, 38, 39, 40, and 41.

57. Defendant Lakeland's retaliatory and interfering intent is established by the temporal proximity between Plaintiffs' ERISA-protected activities and the adverse actions, and by evidence of pretext, as set forth in Paragraphs 15, 19, 20, 20A, 20B, 20C, 21, 26, 30, 31, 32, 33, 40, 41, and 42.

**As to Defendant Haupt**

58. Defendant Haupt, in his capacity as CEO and Plan Administrator, interfered with Plaintiffs' ERISA rights and retaliated against them for asserting those rights.

59. The actions taken by Defendant Haupt that interfered with Plaintiffs' attainment of benefits and constituted retaliation are set forth in Paragraphs 16, 20A, 20B, 22, 27, 33, 37, 41, and 44. These actions include failing to furnish the SPD, misrepresenting the identity of the Plan Administrator, allowing inaccurate compensation data to remain in Plaintiffs' benefits records in a way Plaintiffs contend increased Ms. Mandeville's premium burden and made coverage unaffordable, obstructing access to affordable coverage and timely cancellation, and participating in the decision to terminate Plaintiffs.

60. Defendant Haupt's specific intent to interfere is established by his actions described in Paragraphs 16, 20A, 20B, 22, 24A, 27, 33, and 44.

61. As a direct and proximate result of the retaliatory and interfering actions taken by Defendants Lakeland and Haupt, Plaintiffs suffered damages, as set forth in Paragraph 45.

**Count III — Breach of Fiduciary Duty under ERISA (29 U.S.C. § 1104)**

**Against Defendant Haupt**

62. Section 404 of ERISA, 29 U.S.C. § 1104, requires a plan fiduciary to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity would use.

63. At all relevant times, Defendant Haupt was the Plan Administrator and a fiduciary of the Plan. The factual basis for this element is set forth in Paragraph 7.

64. Defendant Haupt breached his fiduciary duties to Plaintiffs by, among other actions: a. Failing to furnish a copy of the SPD within 30 days of Plaintiffs' written request, as required by ERISA, thereby depriving Plaintiffs of essential information about their rights and benefits under the Plan. The factual bases for this breach are set forth in Paragraphs 15, 16, 20A, and 44. b. Failing to ensure the accuracy of Plan records and to correct known errors in Plaintiffs' enrollment and compensation data, which obstructed their access to affordable and usable health coverage. The factual bases for this breach are set forth in Paragraphs 20B and 27. c. Misrepresenting the

18

identity of the Plan Administrator, which impeded Plaintiffs' ability to exercise their rights and seek redress for plan-related issues. The factual bases for this breach are set forth in Paragraphs 22 and 20C. d. Failing to act solely in the interest of participants by allowing inaccurate benefit records and unaffordable premium structures to remain uncorrected even after EBSA involvement, thereby obstructing Plaintiffs' access to medically necessary care. The factual bases for this breach are set forth in Paragraphs 20B, 20C, 27, and 28. e. Providing incomplete or misleading information to EBSA in response to official requests for Plan documents and eligibility information, and failing to correct what Plaintiffs contend were EBSA-documented misstatements in Plaintiffs' benefit records, including inflated salary figures that increased premiums. The factual bases for this breach are set forth in Paragraphs 20A and 20B.

65. As a direct and proximate result of Defendant Haupt's breaches of fiduciary duty, Plaintiffs suffered damages, including loss of health benefits and inability to access necessary medical treatment, as set forth in Paragraph 45.

Count IV — Statutory ERISA SPD Penalties (29 U.S.C. § 1132(c))

**Against Defendant Haupt**

66. Pursuant to 29 U.S.C. § 1024(b)(4), a plan administrator must, upon written request of any participant, furnish a copy of the latest updated SPD within 30 days of the request.

67. A plan administrator who fails to comply with such a request may, in the court's discretion, be personally liable to the participant for up to $110 per day from the date of such failure, pursuant to 29 U.S.C. § 1132(c)(1).

68. Plaintiff Ms. Mandeville, a Plan participant, made a written request for the SPD. The factual basis for this element is set forth in Paragraph 15.

69. Defendant Haupt, as Plan Administrator, failed to provide the SPD within the 30-day statutory deadline, which expired on or about April 21, 2023. The factual bases for this element are set forth in Paragraphs 7, 16, and 44.

70. Defendant Haupt's failure to provide the requested document continued for at least 507 days, from on or about April 21, 2023 through at least September 9, 2024. The factual basis for this duration is set forth in Paragraph 44.

71. Plaintiffs are therefore entitled to seek statutory penalties against Defendant Haupt in an amount up to $110 per day for each day of non-compliance. Based on a minimum of 507 days of non-compliance, Plaintiffs request

penalties of up to $55,770 (507 days × $110), subject to the Court's

discretion under 29 U.S.C. § 1132(c)(1).

Count V — ADA Retaliation

**Against Defendant Lakeland**

72. The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203, prohibits

an employer from discriminating against an individual because such

individual has opposed any act or practice made unlawful by the ADA or

because such individual made a charge or participated in any manner in an

investigation, proceeding, or hearing under the ADA.

73. At all relevant times, Plaintiffs were qualified individuals with disabilities

and/or were associated with a person with a disability. The factual bases for

this element are set forth in Paragraphs 13 and 14.

74. Plaintiffs engaged in protected activity under the ADA by opposing conduct

they reasonably believed to be unlawful under the ADA, including

Defendant Lakeland's revocation of Ms. Mandeville's reasonable

accommodation. The factual basis for the existence and subsequent

revocation of this accommodation is set forth in Paragraph 35.

75. Following Plaintiffs' protected activities under the ADA, Defendant Lakeland subjected them to adverse employment actions. The factual bases for these adverse actions are set forth in Paragraphs 26, 29, 31, 33, 34, 35, 38, 39, 40, and 41.

76. A causal connection exists between Plaintiffs' protected activities and the adverse employment actions. This causation is established by the close temporal proximity between the protected acts and adverse actions and by evidence of pretext, including the sudden revocation of a longstanding accommodation and the disparate treatment of Plaintiffs compared to other employees. The factual bases for causation and pretext are set forth in Paragraphs 30, 32, 35, 37, 40, 41, and 42.

77. As a direct and proximate result of Defendant Lakeland's retaliation, Plaintiffs suffered damages as set forth in Paragraph 45.

State Law Claims

**Count VI — Defamation**

**Against Defendant Lakeland**

78. Under Alabama law, defamation consists of a false and defamatory statement concerning the plaintiff, a publication of that statement to a third person, and resulting injury.

79. Defendant Lakeland, through its agents, published a false and defamatory statement that Ms. Mandeville had "threatened a lawsuit." The factual basis for this element is set forth in Paragraph 36.

80. This statement was published to Lakeland management and used as a basis for adverse employment actions. The factual bases for this element are set forth in Paragraphs 36, 37, and 38.

81. The statement was false. The factual basis for this element is set forth in Paragraph 37, which describes Ms. Mandeville's possession of exculpatory audio evidence that Defendants refused to review.

82. As a direct result of this defamatory statement, Plaintiffs suffered damages, including but not limited to Ms. Mandeville's forced transfer, reduced duties and hours, and damage to their professional reputations. The factual bases for this element are set forth in Paragraphs 38 and 39.

**Count VII — Intentional Infliction of Emotional Distress**

**Against Defendant Lakeland**

83. Defendant Lakeland engaged in extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress to Plaintiffs.

84. The extreme and outrageous conduct includes, but is not limited to, withdrawing Ms. Mandeville's entire paycheck from her bank account without notice over a holiday weekend, causing a significant overdraft and extreme financial and emotional hardship. The factual basis for this conduct is set forth in Paragraph 33.

85. Defendant Lakeland knew or should have known that this conduct would cause severe emotional distress.

86. As a direct and proximate result of this conduct, Plaintiffs suffered severe emotional distress and mental anguish, as set forth in Paragraph 45.

Damages, ERISA Remedies, and Calculation of Statutory Penalties

87. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to relief including: a. **Back Pay:** Lost wages and other compensation from the date of termination, November 1, 2024, to the date of judgment. b. **Reinstatement or Front Pay:** Reinstatement to their former positions with full seniority and benefits or, in the alternative, an award of front pay for a reasonable period to compensate for future lost earnings. c. **Lost Benefits:** Damages for the value of lost health insurance, retirement

contributions, and other employment benefits, including out-of-pocket medical costs such as the cost of Mr. Cullen's Humira medication, which is expected to be approximately $6,000 per month without insurance, and including premium overcharges and continued payroll deductions for health coverage after Plaintiffs sought cancellation, subject to proof at trial.

d. **Compensatory Damages:** Damages for emotional distress, mental anguish, humiliation, and other non-economic harm resulting from Defendants' retaliatory and tortious conduct. e. **Punitive Damages:** An award of punitive damages against Defendants to punish their willful, knowing, and reckless disregard for Plaintiffs' federally protected rights and to deter similar future conduct. f. **ERISA Statutory Penalties:** Statutory penalties against Defendant Haupt personally in an amount up to $110 per day for his failure to provide the SPD for at least 507 days, for a total of up to $55,770, as set forth in Paragraphs 44, 70, and 71. g. **Attorneys' Fees and Costs:** An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), 29 U.S.C. § 218c, and other applicable law, if Plaintiffs later obtain legal counsel.

Exhaustion / Administrative Remedies

88. Plaintiffs have exhausted their administrative remedies as required by law.

25

a. On September 29, 2023, Ms. Mandeville filed a whistleblower complaint with OSHA, as described in Paragraph 23.

b. On October 5, 2023, Mr. Cullen filed a whistleblower complaint with OSHA, as described in Paragraph 24.

c. OSHA accepted both ACA whistleblower complaints for investigation, and more than 210 days have elapsed since the filing of both complaints without a final decision from the Secretary of Labor, entitling Plaintiffs to bring this action *de novo* pursuant to 29 U.S.C. § 218c(b)(2)(A). The factual basis for this is set forth in Paragraph 43.

d. Plaintiffs have also filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and have received Notices of Right to Sue, thereby exhausting their administrative remedies for claims under the ADA. In particular, Mr. Cullen received Notices of Right to Sue dated June 25, 2025, on EEOC Charge Nos. 420-2025-00189 and 420-2025-01381, and Ms. Mandeville likewise received Notices of Right to Sue on her ADA retaliation charges.

26

e. OSHA invited Plaintiffs to participate in its Expedited Case Processing Pilot for ACA whistleblower complaints, which they accepted, but no final decision issued within 210 days.

f. From approximately May through November 2023, Plaintiffs repeatedly sought assistance and enforcement from EBSA concerning Defendants' ERISA- and ACA-related conduct, as described in Paragraphs 19, 20, 20A, 20B, 20C, and 20D, but neither ERISA nor the ACA requires exhaustion of EBSA processes before filing this civil action.

Prayer for Relief

WHEREFORE, Plaintiffs Chelsea Kaye Mandeville and Patrick Keith Cullen respectfully request that this Court enter a judgment in their favor and against Defendants, and grant the following relief:

1. A declaratory judgment that Defendants' actions violated Plaintiffs' rights under the ACA (29 U.S.C. § 218c) and ERISA (29 U.S.C. § 1140);

2. A declaratory judgment that Defendant Haupt breached his fiduciary duties under ERISA (29 U.S.C. § 1104);

3. An order reinstating Plaintiffs to their former positions or, in the alternative, an award of front pay;

4. An award of back pay, with prejudgment interest;

5. An award of compensatory damages for lost benefits, emotional distress, and other harm;

6. An award of punitive damages;

7. An award of statutory penalties against Defendant Haupt under 29 U.S.C. § 1132(c);

8. A permanent injunction prohibiting Defendants from engaging in further unlawful retaliation;

9. An order requiring Defendants to expunge all retaliatory documentation from Plaintiffs' personnel files;

10. An award of reasonable attorneys' fees and costs;

11. Prejudgment and post-judgment interest; and

12. Such other and further relief as the Court deems just and proper.

Jury Demand

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Respectfully submitted this 6th day of January, 2026.

/s/ Chelsea Kaye Mandeville

Chelsea Kaye Mandeville

400 W Blue Mountain Rd

Anniston, AL 36201

(850)-329-5549

Ckayem@yahoo.com

Pro Se Plaintiff


/s/ Patrick Keith Cullen

Patrick Keith Cullen

400 W Blue Mountain Rd

Anniston, AL 36201

(256) 589-2167

Phathacked@proton.me

Pro Se Plaintiff


January 4, 2026

Packing Slip for Order

**Chelsea Mandeville**
400 W Blue Mountain Rd
Anniston, AL 36201-2555
US

**Order Date:** 01/04/2026
**Shipped Via:** UPS Next Day Air®
**Tracking Number:** 1Z1071K50120026415

**Ship To:**   Clerk of Court; Hugo L Black US Distr...
1729 5th Ave N
Birmingham, AL 35203-2022
US

Chelsea Mandeville
and
Patrick Cullen
400 W. Blue Mountain Rd
Anniston AL
36201

P:GOLD                 S: L
TIDE - 1052         6415
BIRMINGHAM AL 35203
ALABAMA NORTHERN DISTRICT COURT
1729 5TH AVE N
1:57        1030

CHELSEA MANDEVILLE
8503295549
400 W BLUE MOUNTAIN RD
ANNISTON  AL 36201-2555

1 LBS            10
DWT: 12,10,1

SHIP TO:
CLERK OF COURT: HUGO L BLACK US DIS
ALABAMA NORTHERN DISTRICT COURT
1729 5TH AVE N
**BIRMINGHAM  AL 35203-2022**

## AL 353 9-01

## UPS NEXT DAY AIR                     1
TRACKING #: 1Z 107 1K5 01 2002 6415

BILLING: 3RD PARTY

XOL 25.10.

**The UPS Store RFID Label**

**Tracking #**

**1Z1071K5012002  6415**