FILED

2026 Feb-13  AM 11:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ALABAMA

## SOUTHERN DIVISION

FILED

2026 FEB 12  P 3 49

U.S. DISTRICT COURT
N.D. OF ALABAMA

|  |  |  |
|---|---|---|
| CHELSEA K. MANDEVILLE | ) | |
| and | ) | |
| PATRICK KEITH CULLEN, | ) | |
| PLAINTIFFS, | ) | |
| v. | ) | |
| LAKELAND CEMETERY SERVICES, | ) | Civil Action No. 1:25-cv-00523-CLM |
| INC., | ) | |
| EVERSTORY PARTNERS, LLC, and | ) | |
| CRAIG HAUPT, individually and in his | ) | |
| capacity as Plan Administrator, | ) | |
| DEFENDANTS. | | |

**February 7, 2026**

## SECOND AMENDED CONSOLIDATED CIVIL COMPLAINT

### NATURE OF ACTION

1. This employment discrimination, retaliation, and employee benefits enforcement action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; the Affordable Care Act's anti-retaliation provision, 29 U.S.C. § 218c; the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

**JURISDICTION AND VENUE**

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e)(1) (ERISA jurisdiction).

3.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to these claims occurred in Etowah County and Calhoun County, Alabama, where Plaintiffs performed their work and experienced the adverse actions alleged herein.

## ADMINISTRATIVE PREREQUISITES AND EXHAUSTION OF REMEDIES

4.  Plaintiffs have satisfied all administrative prerequisites for filing this action as follows:

**A. Plaintiff Patrick K. Cullen (EEOC)** Plaintiff Cullen filed the following matters with the Equal Employment Opportunity Commission (EEOC) and has exhausted his administrative remedies: a. **Charge No. 420-2025-01382** against Lakeland Cemetery Services involving allegations of retaliation under the Americans with Disabilities Act. Plaintiff Cullen received a Notice of Right to Sue from the EEOC regarding this charge on or around June 25, 2025. **(See Exhibit B).** b. **Charge No. 420-2025-00189** against Everstory Partners involving allegations of retaliation under the Americans with Disabilities Act. Plaintiff Cullen received a Notice of Right to Sue from the EEOC regarding this charge on or around June 25, 2025. **(See Exhibit B).** Pursuant to these Notices of Right to Sue, Cullen filed a Civil Complaint with the Northern District Court of Alabama, Eastern Division in September 2025, under Case No. 1:25-CV-01665-CLM.

**B. Plaintiff Chelsea K. Mandeville (EEOC)** Plaintiff Mandeville filed the following matters with the EEOC and has exhausted her administrative remedies: a. **Charge No. 420-2023-02996** filed on October 27, 2023, against Lakeland Cemetery Services, Inc., involving

allegations of discrimination under the Americans with Disabilities Act, the Equal Pay Act regarding disparate terms and conditions of employment (not hourly wages), and Gender. Mandeville received a Notice of Right to Sue for this charge from the EEOC on or around June 25, 2025. **(See Exhibit C)**. b. **Charge No. 420-2024-00640** filed on April 29, 2024, against Lakeland Cemetery Services, involving allegations of retaliation regarding the filing of her first charge (No. 420-2023-02996). Plaintiff Mandeville received a Notice of Right to Sue from the EEOC regarding this charge on or around June 25, 2025. **(See Exhibit C)**. c. **Charge No. 420-2025-00032** filed on April 29, 2024, against Everstory Partners involving allegations of discrimination and retaliation under the ADA. Mandeville received a Notice of Right to Sue from the EEOC regarding this charge on or around June 25, 2025. **(See Exhibit C)**. Mandeville filed in the District Court pursuant to receiving the Notices of Right to Sue for these cases on or around September 2025.

**C. OSHA Whistleblower Retaliation (ACA)** Plaintiffs have exhausted administrative remedies regarding their Affordable Care Act whistleblower claims pursuant to the "kickout" provision of 29 U.S.C. § 218c and 29 C.F.R. § 1984.114: a. **Filings:** Mandeville filed for Whistleblower Retaliation under the ACA with OSHA on or around September 8, 2023. Cullen filed for Whistleblower Retaliation under the ACA with OSHA on or around October 5, 2023. b. **Expedited Processing & OALJ Appeal:** Both Plaintiffs were offered the chance to participate in the OSHA Whistleblower expedited case processing pilot and accepted. They subsequently filed individual appeals with the Office of Administrative Law Judges (OALJ), which opened cases for appeal on or around April 4, 2024, under case numbers **ACA-2024-0001** and **ACA-2024-0002**, which were consolidated. c. **District Court Jurisdiction (Kickout):** On or around April 9, 2025, after no decision had been rendered from the OALJ or Secretary of Labor for over 300 days from the date of filing the complaints, Plaintiffs filed Case No. 1:25-cv-00523-CLM in the Northern District Court of Alabama, Eastern Division,

pursuant to the statutory kickout provision. **(See Exhibit D, Order from Judge Bell regarding Notice of Kickout).**

**PARTIES**

5.  Plaintiff Chelsea K. Mandeville is an adult individual residing in Calhoun County, Alabama. She was employed by Defendant Lakeland Cemetery Services, Inc. as a landscaper/mower from approximately June 2021 through November 1, 2024.

6.  Plaintiff Patrick Keith Cullen is an adult individual residing in Calhoun County, Alabama. He was employed by Defendant Lakeland Cemetery Services, Inc. from approximately May 2010 through November 1, 2024, last serving as Crew Leader.

7.  Defendant Lakeland Cemetery Services, Inc. ("Lakeland") is an Alabama corporation with its principal place of business in Alabama. At all relevant times, Lakeland was Plaintiffs' direct employer and employed more than 15 employees for each working day in each of 20 or more calendar weeks in the relevant period, rendering it an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 42 U.S.C. § 12111(5)(A). Lakeland is a "large employer" within the meaning of 26 U.S.C. § 4980H(c)(2), employing at least 50 full-time or full-time-equivalent employees during 2023 and 2024.

8.  Defendant Everstory Partners, LLC ("Everstory") is a Delaware limited liability company that owns and operates cemetery properties in Alabama and other states. At all relevant times, Everstory owned and controlled the cemetery worksites where Plaintiffs performed their duties, including Crestwood Memorial Cemetery and Forest Lawn Gardens. Everstory exercised significant control over Plaintiffs' working conditions, including: (a) site access policies and restrictions; (b) security protocols;

(c) work scheduling parameters; and (d) personnel decisions affecting Plaintiffs' ability to perform their duties. Everstory employed more than 15 employees for each working day in each of 20 or more calendar weeks in the relevant period and is therefore an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 42 U.S.C. § 12111(5)(A).

9.  Defendant Craig Haupt is sued in his individual capacity and in his capacity as Plan Administrator of the Lakeland Cemetery Services, Inc. Employee Health and Welfare Benefit Plan (the "Plan"). At all relevant times, Haupt served as Chief Executive Officer of Lakeland and as Plan Administrator within the meaning of 29 U.S.C. § 1002(16)(A).

## FACTUAL ALLEGATIONS

### A. Employment Background and Plan Enrollment

10.  Cullen began working for Lakeland in approximately May 2010 as a grounds maintenance worker. In approximately 2017, Lakeland promoted him to Crew Leader, a supervisory position with responsibility for directing work crews at cemetery properties.

11.  Mandeville began working for Lakeland in approximately June 2021 as a mower/landscaper.

12.  Plaintiffs' work assignments took them to cemetery properties owned or controlled by Everstory, including Crestwood Memorial Cemetery in Etowah County and Forest Lawn Gardens in Calhoun County, Alabama.

13. Plaintiffs worked seasonally from approximately March 11 through December 23 each year. During the work season, they were scheduled for approximately 40 hours per week and were treated as full-time or full-time-equivalent employees under Lakeland's employment practices.

14. As of November 1, 2024, Mandeville's hourly rate was $18.00 per hour. Cullen's hourly rate as Crew Leader was approximately $19.00 per hour.

15. Under Lakeland's policies, each Plaintiff received approximately 80 hours (10 working days) of paid vacation annually in 2023 and 2024, paid at their regular hourly rates.

16. Lakeland sponsors an employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1), providing group health insurance coverage to eligible employees (the "Plan"). The Plan is subject to ERISA's reporting and disclosure requirements under 29 U.S.C. § 1021 et seq.

17. Plaintiffs enrolled in the Plan during 2023 and remained enrolled through their termination on November 1, 2024.

**B. Plaintiffs' Disabilities and Accommodation History**

18. Mandeville has been diagnosed with Systemic Lupus Erythematosus ("Lupus"), a chronic autoimmune disease. Lupus substantially limits major life activities including, but not limited to, the function of the immune system, skin integrity, cardiovascular function, and the ability to work outdoors in sunlight. Mandeville also has related diagnosed conditions including metabolic syndrome, polycystic ovarian syndrome, fibromyalgia, and bipolar disorder type I.

19. In approximately 2017-2018, while employed by Everstory's predecessor StoneMor Inc. at an Alabama cemetery property, Mandeville informed her supervisor of her Lupus diagnosis.

20. In early April 2023, Lakeland Regional Supervisor Jeffrey Simpson approved a reasonable accommodation for Mandeville consisting of: (a) a flexible work schedule allowing her to avoid peak sun exposure hours when medically necessary; and (b) use of a portable sun canopy at outdoor worksites.

21. Cullen has been diagnosed with Stage 3 Hurley hidradenitis suppurativa, a chronic, debilitating skin condition. This condition substantially limits major life activities including walking, standing, sitting, and working. Cullen requires ongoing treatment with Humira (adalimumab), a biologic medication administered by weekly injection. Without consistent Humira therapy, Cullen experiences severe disease flares requiring bedrest and resulting in temporary total disability.

## C. ACA-Related Protected Activity and Initial Retaliation (March-May 2023)

22. In early 2023, Plaintiffs were enrolled in health insurance coverage through the Affordable Care Act Marketplace and were receiving advance premium tax credits ("APTCs") to reduce their monthly premium costs.

23. On March 21, 2023, Mandeville submitted a written request to Defendant Haupt, in his capacity as Plan Administrator, requesting a copy of the Summary Plan Description ("SPD") and other Plan documents required to be furnished under ERISA, 29 U.S.C. § 1024(b)(4).

24. On or about April 26, 2023, Plaintiffs informed Simpson and Haupt that they were receiving APTCs through the ACA Marketplace. They expressed concern that

Lakeland, as a large employer under 26 U.S.C. § 4980H(c)(2), might be subject to employer shared responsibility payments if it failed to offer affordable coverage meeting minimum value standards, and that Plaintiffs might face adverse tax consequences if they received APTCs while eligible for employer-sponsored coverage.

25. On or about May 2, 2023, Plaintiffs participated in a telephone conference with Haupt in his capacity as CEO and Plan Administrator. During this conversation, Plaintiffs: (a) confirmed their receipt of APTCs; (b) raised questions regarding the timing and terms under which Lakeland's group health coverage became available to them; (c) discussed Lakeland's obligations under the ACA's employer shared responsibility provisions; and (d) requested assurance that Lakeland would address any adverse tax or coverage consequences to Plaintiffs resulting from delayed or inadequate disclosure of the employer-sponsored coverage option.

26. On May 3, 2023, Mandeville contacted the U.S. Department of Labor's Employee Benefits Security Administration ("EBSA") by telephone. She discussed: (a) the March 21, 2023 SPD request; (b) concerns about Plan documentation and disclosure; and (c) questions regarding the interaction between employer-sponsored coverage and ACA Marketplace APTCs.

27. On May 4, 2023—one business day after the May 3, 2023 EBSA telephone contact— Lakeland issued a written disciplinary notice jointly addressed to both Plaintiffs. Plaintiffs did not receive actual notice of this disciplinary action at the time it was purportedly issued.

28. On May 7, 2023, Mandeville submitted a written complaint to EBSA through EBSA's online portal, assigned case number 20234009321. This complaint addressed Plan documentation requirements and ACA-related compliance concerns.

29. On May 8, 2023—one business day after the May 7, 2023 written EBSA complaint—Lakeland issued a second written disciplinary notice jointly addressed to both Plaintiffs. Plaintiffs did not receive actual notice of this disciplinary action at the time it was purportedly issued.

30. Plaintiffs first learned of the May 4 and May 8, 2023 disciplinary notices months later when Lakeland produced them during an OSHA whistleblower investigation.

**D. EBSA Investigation and Plan Access Problems (June-July 2023)**

31. On or about June 27, 2023, EBSA Senior Benefits Advisor Andres Mendez contacted Haupt by email regarding Plaintiffs' benefits-related complaints (EBSA Technical Assistance Inquiry System ("TAIS") number 202350-07916).

32. On or about June 29, 2023, Haupt responded to EBSA. He provided a Summary of Benefits and Coverage but did not provide the complete SPD.

33. Following EBSA's involvement, Plaintiffs experienced persistent difficulties using the Plan that they attribute to inaccurate or uncorrected enrollment data maintained by Lakeland or transmitted to the Plan's insurer, including: (a) An incorrect date of birth for Cullen in the insurer's enrollment system that prevented him from accessing his online account and managing his prescription drug coverage through the Plan's pharmacy benefit manager; (b) Incorrect salary information for Mandeville that affected premium calculations and the determination of whether coverage was "affordable" within the meaning of 26 U.S.C. § 36B(c)(2)(C).

34. Plaintiffs repeatedly reported these data errors to Lakeland representatives and requested correction. Lakeland did not correct the underlying enrollment data errors.

**E. Medical Crisis, Denial of Medical Leave, and Disparate Treatment (July-August 2023)**

35. In July 2023, due to the ongoing problems accessing his Plan prescription drug coverage, Cullen was unable to obtain his weekly Humira injections for several consecutive weeks.

36. As a direct and proximate result of missing multiple Humira doses, Cullen experienced a severe Stage 3 Hurley hidradenitis suppurativa flare. He became bedridden and was unable to perform any work duties. Mandeville provided full-time care for Cullen during this acute episode.

37. Plaintiffs requested paid medical leave so that Mandeville could continue providing necessary care to Cullen without loss of income. Lakeland denied this request for paid medical leave. Lakeland required Plaintiffs to use their accrued vacation time during this period.

38. During this same period (July-August 2023), Lakeland paid part-time employee Justin Gaddison amounts labeled as "bonus" payments while Gaddison was absent from work following elective surgery. Upon information and belief, these bonus payments functionally served as paid medical leave. Gaddison's hourly wage rate exceeded Cullen's hourly rate, notwithstanding Cullen's greater seniority, supervisory responsibilities as Crew Leader, and full-time status.

39. During Plaintiffs' approved vacation absence, Lakeland's outside legal counsel, attorney Megan Huizinga, directed all employment-related communications. When

Plaintiffs requested that a neutral coworker serve as a day-to-day point of contact for work scheduling matters, Lakeland's counsel responded by accusing Plaintiffs of "refusing to communicate" and stating that "words from me are words from your employer."*F. Additional Protected Activity (September-November 2023)**

40. On September 26, 2023, Mandeville filed a second written complaint with EBSA (case number 202340-15921) concerning ongoing Plan documentation and administration issues.

41. As detailed in Section C of Paragraph 4 (Administrative Prerequisites) above, Plaintiffs filed whistleblower retaliation complaints with OSHA under 29 U.S.C. § 218c in September and October 2023 (OSHA case numbers 4-2760-23-073 and 4-2820-23-076) and subsequently pursued these claims through the OALJ expedited pilot program before filing in District Court.

42. [Paragraph intentionally left blank to preserve numbering].

43. On October 27, 2023, Mandeville filed a Charge of Discrimination with the Equal Employment Opportunity Commission (charge number 420-2023-02996), alleging sex discrimination, disability discrimination, and retaliation.

44. On November 8, 2023, Mandeville had another telephone contact with EBSA regarding ongoing Plan issues (EBSA case number 20245001418).

45. On November 9, 2023—one business day after the November 8, 2023 EBSA telephone contact—Lakeland withdrew Mandeville's entire biweekly paycheck from her bank account without prior notice or authorization. This withdrawal caused Mandeville's account to overdraft by more than $1,300. Lakeland later characterized

this as an "error." Lakeland did not reimburse Mandeville for overdraft fees and related charges.

## G. Working Conditions and Everstory Control (2024)

46. In early 2024, several employees left Plaintiffs' work crew. Lakeland did not hire replacement workers. The remaining workload was distributed among fewer employees, increasing the physical demands on Plaintiffs.

47. In early 2024, Lakeland installed video surveillance cameras at Plaintiffs' primary worksites. This surveillance was not implemented at all Lakeland work locations.

48. Plaintiffs continued to request Plan documentation and to raise concerns about ACA and ERISA compliance throughout the period from March 2024 through July 2024.

49. On September 9, 2024—approximately 537 days after Mandeville's March 21, 2023 written SPD request—Mandeville received an incomplete SPD from an EBSA advisor. Lakeland and Haupt never directly furnished the SPD to Plaintiffs as required by 29 U.S.C. § 1024(b)(4).

## H. Accommodation Interference and Hostile Work Environment (July-August 2024)

50. In July 2024, Simpson informed Plaintiffs that Everstory was implementing a time restriction at the Crestwood Memorial Cemetery worksite. This restriction would limit the hours during which Plaintiffs could access the property to perform their assigned work.

51. The time restriction applied only to Plaintiffs' crew and worksite. Upon information and belief, Everstory did not impose comparable time restrictions on other Lakeland crews working at other Everstory properties in the same geographic area.

52. After learning of the restriction, Mandeville asked Simpson whether Lakeland had informed Everstory that she had an approved flexible-schedule accommodation for Lupus. Mandeville requested: (a) information about which Everstory personnel had requested the restriction; (b) an explanation of how the restriction would affect her reasonable accommodation; (c) transparency regarding communications between Lakeland and Everstory concerning her disability and accommodation needs; and (d) that Lakeland engage in the interactive process required by 42 U.S.C. § 12112(b)(5)(A) to identify alternative accommodations or explain any claim of undue hardship.

53. Lakeland did not engage in any meaningful interactive process. Simpson and Haupt informed Mandeville that the restriction originated with Everstory and that Lakeland was obligated to comply with the property owner's requirements.

54. On August 8, 2024, Haupt sent Mandeville an email identifying Everstory managers Gary Crowe and Rachel Davenport as the individuals responsible for implementing the time restriction.

55. On August 8, 2024, shortly after receiving Haupt's email, Mandeville approached Crowe at the Crestwood property. She asked him to: (a) explain the rationale for the time restriction; (b) discuss how the restriction affected her medical accommodation; and (c) reconsider or modify the restriction to permit her continued use of her flexible schedule accommodation.

56. During this conversation, Crowe stated, "I don't care about your lawsuit," and added that if a judge inquired, he would state that the time restriction "had always been 5 o'clock." This statement was false. No such restriction had existed prior to July 2024.

57. Immediately after speaking with Crowe, Mandeville telephoned Davenport. During this call, Mandeville: (a) described her flexible-schedule accommodation for Lupus; (b) explained how the time restriction interfered with that accommodation; (c) offered to play an audio recording of prior conversations to document Lakeland's and Everstory's prior acquiescence to flexible scheduling; and (d) requested that Everstory cease retaliatory conduct and permit her to continue working under her accommodation.

58. Davenport refused to listen to the audio recording. She accused Mandeville of threatening legal action and declined to discuss any modification to the time restriction.

59. Following the telephone call with Davenport, Everstory employees at Crestwood followed Mandeville around the property in a manner that she perceived as intimidating and hostile. Mandeville left the property because she did not feel safe.

60. Mandeville informed Simpson that she did not feel safe returning to the Crestwood worksite without Cullen present. At that time, Cullen was absent due to a disability-related medical appointment.

## I. Transfer to Forest Lawn Gardens (September-October 2024)

61. On or about August 26, 2024, Simpson asked Plaintiffs whether transferring to another Everstory property—Forest Lawn Gardens—would address the hostile conduct they had experienced at Crestwood. Simpson explicitly referenced hostility from Everstory representatives. Simpson and Haupt informed Plaintiffs that this would be a lateral transfer.

62. Plaintiffs agreed to the transfer to Forest Lawn Gardens. The transfer became effective on or about September 1, 2024.

63. At Forest Lawn Gardens, Plaintiffs' job duties were reduced compared to their prior assignments. They were denied access to certain work areas and equipment that had been available at other locations. Additional surveillance measures were present at Forest Lawn Gardens.

64. At Forest Lawn Gardens, Plaintiffs were prohibited from working on Saturdays, even though Saturday work had been permitted and common at their prior locations during previous seasons. On at least one occasion when Plaintiffs arrived to work on a Saturday, Everstory personnel ordered them to leave the property, despite the location manager expressing no objection to their presence.

65. In late October 2024, Cullen spoke with Everstory representative Harold McClellan at Forest Lawn Gardens. Cullen explained his understanding of his legal rights under federal anti-discrimination and anti-retaliation laws, asked McClellan to cease participating in conduct that Cullen believed constituted retaliation, and requested fair treatment going forward.

## J. Notice of Intent to Amend OSHA Complaints and Final Protected Activity (October 2024)

66. In late October 2024, Plaintiffs prepared to file amended complaints in their pending OSHA whistleblower proceedings (case numbers 4-2760-23-073 and 4-2820-23-076). These amendments would add allegations of post-filing retaliation and add Everstory as an additional respondent.

67. On October 28, 2024, Mandeville sent an email to Lakeland's counsel, attorney Megan Huizinga. In this email, Mandeville provided advance notice that Plaintiffs intended to file amended OSHA complaints alleging additional adverse actions and naming Everstory as an additional respondent.

68. On October 31, 2024, Mandeville displayed a whiteboard in an employee-only area at the worksite. The whiteboard contained information about federal anti-retaliation laws and employee rights under those statutes.

## K. Termination (November 1, 2024)

69. On November 1, 2024—one business day after the whiteboard display and four days after Mandeville's October 28 email to counsel—Lakeland terminated both Plaintiffs' employment.

70. November 1, 2024 was the first day of the annual ACA Marketplace open enrollment period for coverage year 2025.

71. Mandeville's termination letter stated that Everstory had rescinded permission for her to be present on Everstory properties. The letter referenced unsigned incident reports purportedly created in July-August 2023. The letter alleged that Mandeville had "accosted" Everstory representatives and had recorded them "after being asked to stop." Mandeville is not aware of any occasion when an Everstory representative asked her to stop audio recording.

72. Cullen's termination letter referenced the same unsigned July-August 2023 incident reports. The letter alleged that Cullen had possessed weapons on company property. Cullen denies these allegations.

73. Plaintiffs requested copies of the incident reports and other documents referenced in the termination letters. Defendants have not provided these documents.

**L. Post-Termination Damages**

74. Based on Plaintiffs' historical seasonal work patterns, they would have remained employed through approximately December 23, 2024 absent their termination. Based on historical patterns and Lakeland's rehiring practices for returning seasonal employees, Plaintiffs would have been recalled for the 2025 work season beginning in March 2025.

75. Following termination, each Plaintiff received unemployment compensation benefits of approximately $275 per week for approximately 13 weeks. These benefits were substantially less than their regular earnings and did not include the value of health insurance or other employment benefits.

76. Lost Wages: From November 1, 2024 through December 23, 2024 (7.71 weeks), Cullen lost wages of $19.00/hour × 40 hours/week × 7.71 weeks = $5,859.60. Mandeville lost wages of $18.00/hour × 40 hours/week × 7.71 weeks = $5,551.20. From their expected recall date (March 11, 2025) through an assumed judgment date approximately 18 months from filing (August 12, 2026): 2025 Season (March 11 - December 23, 2025): 40.86 weeks - Cullen: $19.00 × 40 hours × 40.86 weeks = $31,054.40; Mandeville: $18.00 × 40 hours × 40.86 weeks = $29,419.20. 2026 Season (March 11 - August 12, 2026): 21.71 weeks - Cullen: $19.00 × 40 hours × 21.71 weeks = $16,499.60; Mandeville: $18.00 × 40 hours × 21.71 weeks = $15,631.20. Total Back Pay Through Assumed Judgment Date: Cullen: $53,413.60; Mandeville: $50,601.60. These calculations assume 40-hour work weeks during seasonal employment, work seasons running March 11 through December 23 annually,

judgment entered approximately 18 months from filing, and no mitigation through interim earnings. Actual back pay will be calculated through the date of judgment and will be offset by unemployment compensation received ($3,575 per Plaintiff) and any interim earnings. Wage losses continue to accrue at a rate of $760.00 per week for Cullen and $720.00 per week for Mandeville during seasonal work periods.

77. **Replacement Cost of Health Insurance Coverage:** Plaintiffs assert entitlement to the full replacement cost of obtaining comparable health insurance coverage on the open market, rather than merely the value of the employer's prior contribution, in order to be made whole. Based on the ACA Marketplace, the cost for comparable Silver-level coverage for two adults in Alabama (ages 40-50 range) is approximately $1,800.00 per month. **Replacement Cost Calculations:**

(a) November 1, 2024 through December 31, 2024: 2 months × $1,800/month = $3,600.00.

(b) January 1, 2025 through December 31, 2025: 12 months × $1,800/month = $21,600.00.

(c) January 1, 2026 through August 12, 2026 (assumed judgment date): 7.37 months × $1,800/month = $13,266.00. **Total Replacement Cost of Health Insurance Coverage: $38,466.00.** Without employer-sponsored coverage, Plaintiffs face these substantially higher costs. Furthermore, Cullen's Humira (adalimumab) regimen has a list price exceeding $10,000 per month. Patient assistance programs and manufacturer copay cards can reduce out-of-pocket costs but require continuous enrollment, recertification, and may have income eligibility limits that fluctuate with employment status. Plaintiffs' inability to afford replacement coverage at these rates constitutes ongoing compensable harm.

78. Medical Care Disruption: Following termination and loss of Plan coverage, Cullen missed multiple Humira doses and experienced disease flares. He incurred at least two emergency room visits in December 2023 and 2024 with bills approximating $12,000 per visit. Mandeville discontinued multiple prescription medications due to cost and has accessed only sporadic low-cost medications during severe Lupus flares.

79. Economic Damages: Plaintiffs have incurred approximately $12,000 in credit card debt and face a lien of approximately $10,000 plus interest on a vehicle due to inability to make payments following loss of income.

80. Barriers to Reemployment: Cullen's primary work experience over the past 14 years has been with Lakeland. Mandeville's relevant experience in the past decade has been with StoneMor/Everstory and Lakeland. The allegations in the termination letters (asserting that Mandeville "accosted" managers and that Cullen possessed weapons) create substantial barriers to obtaining employment references and securing comparable positions. Plaintiffs' ongoing litigation against their former employer further complicates reemployment efforts. Plaintiffs have applied for numerous positions for which they are qualified but have not secured new employment.

81. **Non-Economic Damages:** Plaintiffs report increased depression, anxiety, marital strain, loss of self-confidence, and social isolation. Their closest friendships had been with coworkers; these relationships deteriorated following the workplace disputes and termination. Mandeville has been unable to afford to travel to visit her elderly father in Florida since her mother's death in 2023. Cullen reports that stress and depression have contributed to poor decision-making that has resulted in pending criminal charges. **Pursuant to FRCP 9(g), Plaintiffs specifically plead non-economic damages calculated using a per diem methodology.** Plaintiffs seek compensation

for the period beginning with the initial adverse actions and retaliation in May 2023 through the anticipated date of judgment in August 2026 (approximately 1,196 days). Calculating fair compensation for pain, suffering, and emotional distress at a rate of **$200.00 per day per Plaintiff** yields a total of approximately **$239,200.00 per Plaintiff**. This amount is consistent with the severity of the harm, including the exacerbation of chronic medical conditions (Lupus and hidradenitis suppurativa) caused by Defendants' discriminatory and retaliatory conduct.

82. Educational Disruption: Mandeville enrolled in online degree programs at Purdue University Global and Amridge University but withdrew from both programs due to financial constraints and health problems caused by lack of insurance coverage. She has incurred student loan obligations without obtaining a degree.

## COUNT I: ACA WHISTLEBLOWER RETALIATION (29 U.S.C. § 218c)

Against Defendant Lakeland Cemetery Services, Inc.

83. Plaintiffs incorporate paragraphs 1-4, 5-7, 10-17, 22-30, 31-34, 40-45, 48-49, 66-73, and 74-82.

84. Section 18C of the Fair Labor Standards Act, as added by the Affordable Care Act, 29 U.S.C. § 218c(a)(3), prohibits an employer from discharging or otherwise retaliating against an employee because the employee: (a) Received a tax credit or subsidy under 26 U.S.C. § 36B; (b) Provided information to the employer or the Federal Government regarding any violation of Title I of the ACA; or (c) Objected to or refused to participate in an activity that the employee reasonably believed violated Title I of the ACA.

85. Plaintiffs engaged in protected activity under 29 U.S.C. § 218c when they: (a) Informed Lakeland on April 26, 2023 and May 2, 2023 that they were receiving APTCs under 26 U.S.C. § 36B; (b) Raised concerns on May 2, 2023 regarding Lakeland's compliance with the ACA's employer shared responsibility provisions, 26 U.S.C. § 4980H; (c) Requested on March 21, 2023 and repeatedly thereafter that Lakeland provide Plan documentation necessary for Plaintiffs to understand whether employer-sponsored coverage was available, affordable, and provided minimum value—information necessary to determine eligibility for APTCs; (d) Filed complaints with EBSA on May 7, 2023, September 26, 2023, November 8, 2023, and at other times regarding Plan documentation and ACA compliance; (e) Filed OSHA whistleblower complaints under 29 U.S.C. § 218c on September 29, 2023 and October 5, 2023; and (f) Notified Lakeland's counsel on October 28, 2024 of their intent to file amended OSHA complaints adding allegations of post-filing retaliation.

86. Lakeland knew of this protected activity because Plaintiffs raised ACA-related concerns directly with Simpson and Haupt, EBSA contacted Haupt, Lakeland received notice of the OSHA complaints, and Mandeville's October 28, 2024 email placed counsel on actual notice.

87. Lakeland subjected Plaintiffs to adverse employment actions, including: (a) Issuing written disciplinary notices on May 4, 2023 (one day after EBSA telephone contact) and May 8, 2023 (one day after written EBSA complaint); (b) Refusing to correct Plan enrollment data errors that prevented Cullen from accessing prescription drug coverage and affected Mandeville's premium affordability determination; (c) Denying paid medical leave in July 2023 while providing paid-leave-equivalent bonus payments to a male comparator employee during the same period; (d) Withdrawing

Mandeville's entire paycheck on November 9, 2023 (one day after EBSA telephone contact), causing overdraft and financial harm; (e) Implementing surveillance and work restrictions in 2024; (f) Transferring Plaintiffs to Forest Lawn Gardens with reduced duties and hours in September 2024; and (g) Terminating both Plaintiffs on November 1, 2024, four days after receiving notice of intent to file amended OSHA complaints and one day after Mandeville's whiteboard display of anti-retaliation law information.

88. The temporal proximity between protected activity and adverse action—particularly the one-day and four-day gaps—gives rise to a strong inference of causal connection. See Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (temporal proximity creating inference of causation).

89. Plaintiffs' protected activity was a contributing factor in the adverse actions. The pattern of disciplinary actions, adverse treatment, and ultimate termination immediately following protected communications establishes but-for causation.

90. As a direct and proximate result of Lakeland's retaliation, Plaintiffs suffered economic damages (lost wages and benefits), consequential damages (medical expenses and deterioration of health), and non-economic damages (emotional distress, reputational harm, and disruption of educational pursuits).

**WHEREFORE, Plaintiffs request:**

a.    A declaratory judgment that Lakeland violated 29 U.S.C. § 218c;

b.    Back pay and front pay or reinstatement;

c.    Compensatory damages for economic and non-economic losses;

d.  Liquidated damages as permitted by 29 U.S.C. § 216(b), incorporated by 29 U.S.C. § 218c(d);

e.  Injunctive relief; and

f.  Reasonable attorneys' fees and costs if counsel is later retained.

## COUNT II: ERISA § 510 INTERFERENCE (29 U.S.C. § 1140)

Against Defendants Lakeland Cemetery Services, Inc. and Craig Haupt

91.  Plaintiffs incorporate paragraphs 1-4, 5-7, 9, 10-17, 22-25, 31-34, 36-39, and 74-82.

92.  ERISA § 510, 29 U.S.C. § 1140, provides: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

93.  Plaintiffs were "participants" in the Plan within the meaning of 29 U.S.C. § 1002(7) because they were employees eligible for and enrolled in Plan coverage.

94.  Plaintiffs exercised ERISA-protected rights when they: (a) Requested Plan documents, including the SPD, on March 21, 2023 and repeatedly thereafter (29 U.S.C. § 1024(b)(4)); (b) Enrolled in Plan coverage and attempted to use Plan benefits; (c) Requested correction of Plan enrollment data that affected their ability to access covered benefits; and (d) Reported Plan administration deficiencies to EBSA.

95.  Lakeland and Haupt engaged in conduct that interfered with Plaintiffs' ERISA rights by: (a) Failing to provide the SPD within 30 days of the March 21, 2023 written

request, and failing to provide a complete SPD directly to Plaintiffs at any time prior to termination; (b) Maintaining inaccurate enrollment data (Cullen's date of birth, Mandeville's salary information) and refusing to correct these errors despite repeated requests, thereby preventing Plaintiffs from effectively accessing Plan benefits; (c) Issuing disciplinary notices on May 4 and 8, 2023, in temporal proximity to EBSA contacts regarding Plan compliance; and (d) Terminating Plaintiffs' employment on November 1, 2024, thereby terminating their Plan participation.

96. Specific intent to interfere with ERISA rights may be inferred from the timing of adverse actions following ERISA-protected activity. See Perdue v. Roy Stone Transfer Corp., 690 F.3d 1091, 1095 (11th Cir. 2012). The one-day temporal proximity between EBSA contacts and disciplinary actions, combined with Defendants' refusal to correct data errors, supports an inference of specific intent.

97. Alternatively, under Gavalik v. Continental Can Co., 812 F.2d 834, 852 (3d Cir. 1987), an ERISA § 510 claim may be established by showing that denial of benefits was a motivating factor for the adverse action. The denial of paid medical leave and subsequent termination that ended Plan participation support liability under this standard.

98. As a direct and proximate result of this interference, Plaintiffs lost Plan coverage and access to medical care. Cullen was unable to obtain Humira injections, resulting in severe disease flares and emergency room visits. Mandeville discontinued prescription medications due to cost.

**WHEREFORE, Plaintiffs request:**

a.   A declaratory judgment that Lakeland and Haupt violated 29 U.S.C. § 1140;

b.    Equitable relief requiring Defendants to: (i) provide complete and accurate Plan documents; (ii) correct enrollment records; and (iii) provide make-whole relief for the period during which Plaintiffs were unable to access Plan benefits due to data errors;

c.    Compensatory damages for medical expenses, cost of replacement coverage, and health deterioration;

d.    Such other relief as equity requires under 29 U.S.C. § 1132(a)(3); and

e.    Reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1) if counsel is later retained.

## COUNT III: ERISA § 502(c)(1) DOCUMENT PENALTIES (29 U.S.C. § 1132(c)(1))

Against Defendant Craig Haupt

99.  Plaintiffs incorporate paragraphs 1-4, 5, 7, 9, 16-17, 22-23, 31-32, 48-49.

100. ERISA requires plan administrators to furnish certain documents to plan participants within 30 days of a written request. 29 U.S.C. § 1024(b)(4).

101. The Summary Plan Description is among the documents subject to the 30-day furnishing requirement. 29 U.S.C. § 1024(b)(4); 29 C.F.R. § 2520.104b-1.

102. On March 21, 2023, Mandeville submitted a written request to Haupt, in his capacity as Plan Administrator, for the SPD and related Plan documents required by ERISA.

103. Haupt did not provide the SPD within 30 days of March 21, 2023 (i.e., by April 20, 2023).

104. On June 29, 2023, Haupt provided a Summary of Benefits and Coverage to EBSA but did not provide the complete SPD.

105. On September 9, 2024—537 days after the March 21, 2023 request—Mandeville received an incomplete SPD from an EBSA advisor. Haupt never directly furnished the SPD to Plaintiffs.

106. The failure to furnish the SPD within 30 days of a written request violates 29 U.S.C. § 1024(b)(4).

107. ERISA authorizes the Court to impose a civil penalty of up to $110 per day from the date of the failure, not to exceed a maximum penalty based on the statutory formula. 29 U.S.C. § 1132(c)(1)(B); adjusted for inflation per 29 C.F.R. § 2575.502c-1 (2024 maximum: $188 per day).

108. The period of non-compliance extended from April 21, 2023 (the day after the 30-day deadline) through at least September 9, 2024 (507 days), and arguably continues through the present date as Haupt never directly furnished a complete SPD to Plaintiffs.

**WHEREFORE, Plaintiffs request:**

a.  A declaratory judgment that Haupt violated 29 U.S.C. § 1024(b)(4);

b.  Statutory penalties under 29 U.S.C. § 1132(c)(1) in an amount up to $188 per day for the period of non-compliance, up to the maximum penalty permitted by statute;

c.  An order requiring Haupt to furnish complete and accurate Plan documents; and

d.  Reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1) if counsel is later retained.

## COUNT IV: ADA DISABILITY DISCRIMINATION — FAILURE TO ACCOMMODATE (MANDEVILLE)

42 U.S.C. § 12112(b)(5)(A)

Against Defendants Lakeland Cemetery Services, Inc. and Everstory Partners, LLC

109. Plaintiff Mandeville incorporates paragraphs 1-4, 5, 7-8, 10-11, 13, 18-20, 50-60, 63-64, and 74-82.

110. Mandeville has Systemic Lupus Erythematosus and related conditions that substantially limit one or more major life activities, including immune system function, skin integrity, cardiovascular function, and the ability to work outdoors in sunlight. She is an "individual with a disability" within the meaning of 42 U.S.C. § 12102(1).

111. With reasonable accommodations—specifically, a flexible work schedule permitting avoidance of peak sun exposure and use of a sun canopy—Mandeville could perform the essential functions of the landscaper/mower position.

112. In April 2023, Lakeland, through supervisor Simpson, granted Mandeville a reasonable accommodation consisting of flexible scheduling and sun canopy use.

113. In July 2024, Everstory, through managers Crowe and Davenport, initiated a time restriction at the Crestwood worksite limiting the hours during which Plaintiffs could be present. This restriction applied only to Plaintiffs' location and conflicted with Mandeville's previously approved flexible-schedule accommodation.

114. After learning of the restriction, Mandeville requested that Lakeland and Everstory: (a) provide information about the restriction's rationale; (b) explain how it affected

her accommodation; and (c) engage in the interactive process required by 42 U.S.C. § 12112(b)(5)(A) to identify alternative accommodations or demonstrate undue hardship.

115. Neither Lakeland nor Everstory engaged in a meaningful interactive process. See Jacobs v. Ga. Dep't of Cmty. Health, 900 F.3d 1243, 1250 (11th Cir. 2018) (employer has statutory duty to engage in interactive process in good faith).

116. On August 8, 2024, when Mandeville approached Crowe to discuss her accommodation, he dismissed her concerns and made false statements about the restriction having "always been 5 o'clock."

117. When Mandeville telephoned Davenport on August 8, 2024, Davenport refused to discuss accommodations, declined to consider evidence of prior flexible-schedule arrangements, and accused Mandeville of threatening litigation.

118. The time restriction effectively rescinded Mandeville's flexible-schedule accommodation. Following the August 8, 2024 conversations, Everstory personnel followed Mandeville around the worksite in an intimidating manner, and she left because she did not feel safe.

119. The transfer to Forest Lawn Gardens in September 2024 did not restore Mandeville's accommodation. At Forest Lawn Gardens, restrictions on Saturday work and reduced duties further limited her ability to adjust her schedule to minimize sun exposure.

120. Neither Lakeland nor Everstory demonstrated that providing the flexible-schedule accommodation constituted an undue hardship. 42 U.S.C. § 12112(b)(5)(A).

121. Lakeland and Everstory are joint employers within the meaning of 42 U.S.C. § 12111(5)(A). Everstory owned and controlled the worksites, implemented the time restriction that conflicted with Mandeville's accommodation, and exercised direct authority over Plaintiffs' site access. Everstory managers Crowe and Davenport personally refused to accommodate Mandeville. Lakeland and Everstory are jointly and severally liable. See Papa v. Katy Indus., Inc., 166 F.3d 937, 940-41 (7th Cir. 1999).

122. As a direct and proximate result of Defendants' failure to accommodate, Mandeville suffered increased Lupus symptoms, constructive exclusion from her worksite, reduced hours and duties, and ultimate termination of employment.

**WHEREFORE, Plaintiffs request:**

a.   A declaratory judgment that Lakeland and Everstory violated 42 U.S.C. § 12112(b)(5)(A);

b.   Back pay from August 8, 2024 through the date of judgment;

c.   Conditional reinstatement to a supervisory, compliance, or advisory role at Lakeland and/or Everstory, subject to the following conditions: (i) negotiation and execution of a detailed employment agreement specifying accommodation terms, reporting relationships, and termination-only-for-cause provisions; (ii) commitment to accommodation of Mandeville's disabilities; and (iii) agreement to non-retaliation provisions and ongoing monitoring; or, if conditional reinstatement is not feasible, front pay;

d.   Compensatory damages for medical expenses, pain and suffering, emotional distress, and lost educational opportunities;

e.  Injunctive relief requiring Defendants to implement ADA-compliant interactive process procedures; and

f.  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(k)) if counsel is later retained.

## COUNT V: ADA RETALIATION (42 U.S.C. § 12203(a))

Against Defendants Lakeland Cemetery Services, Inc. and Everstory Partners, LLC

123. Plaintiffs incorporate paragraphs 1-4, 5-8, 10-11, 13, 18-21, 50-60, 61-65, 66-73, and 74-82.

124. The ADA prohibits retaliation against individuals who have "opposed any act or practice made unlawful by this chapter" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

125. Plaintiffs engaged in protected opposition when they: (a) Requested accommodations for their disabilities (Mandeville: flexible scheduling and sun canopy for Lupus; Cullen: paid medical leave during severe hidradenitis suppurativa flare in July 2023); (b) Objected to the July 2024 time restriction that interfered with Mandeville's accommodation; (c) Requested in July-August 2024 that Defendants engage in the interactive process and identify alternatives; (d) Mandeville approached Crowe on August 8, 2024 to discuss her accommodation; (e) Mandeville telephoned Davenport on August 8, 2024 to request accommodation; (f) Cullen spoke with Everstory representative McClellan in October 2024, describing his understanding of his legal rights; and (g) Mandeville displayed a whiteboard on October 31, 2024 containing information about anti-retaliation laws.

126. Defendants knew of this protected activity through direct communications (the April 2023 accommodation, the July-August 2024 requests, the August 8, 2024 conversations with Crowe and Davenport, and the October 2024 conversation with McClellan).

127. Lakeland and Everstory subjected Plaintiffs to a series of materially adverse actions: (a) Lakeland's refusal to correct Plan data errors affecting Cullen's access to Humira, which directly caused a severe July 2023 disease flare; (b) Lakeland's denial of paid medical leave in July 2023; (c) Everstory's implementation of the time restriction at Crestwood (July 2024); (d) Everstory personnel following Mandeville in an intimidating manner on August 8, 2024; (e) The transfer to Forest Lawn Gardens with reduced duties and hours (September 2024); (f) Prohibition on Saturday work at Forest Lawn Gardens; and (g) Termination of both Plaintiffs on November 1, 2024.

128. The materially adverse actions were causally connected to the protected activity. The temporal proximity is particularly compelling: July 2023 denial of paid medical leave followed Cullen's request for accommodation during disability-related absence; August 8, 2024 hostile conduct followed Mandeville's direct requests for accommodation to Crowe and Davenport; November 1, 2024 termination occurred one day after the October 31 whiteboard display and four days after the October 28 notice of intent to amend OSHA complaints.

129. Under 11th Circuit precedent, temporal proximity alone can establish causation. See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (three-month proximity sufficient); Drago, 453 F.3d at 1308 (hours or days creating strong inference). The one-day and four-day gaps here establish but-for causation as a matter of law at the pleading stage.

130. Lakeland and Everstory are joint employers and jointly and severally liable. Everstory exercised direct control over accommodation decisions (the time restriction), and Everstory managers personally engaged in retaliatory conduct (Crowe's and Davenport's August 8, 2024 statements and conduct).

131. As a direct and proximate result of this retaliation, Plaintiffs suffered loss of employment, loss of income and benefits, medical care disruption, emotional distress, and reputational harm.

**WHEREFORE, Plaintiffs request:**

a.    A declaratory judgment that Lakeland and Everstory violated 42 U.S.C. § 12203(a);

b.    Back pay from November 1, 2024 through the date of judgment;

c.    For Plaintiff Cullen: front pay in lieu of reinstatement;

d.    For Plaintiff Mandeville: conditional reinstatement as specified in Count IV, or front pay in the alternative;

e.    Compensatory damages;

f.    Injunctive relief; and

g.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12117(a) if counsel is later retained.

## COUNT VI: ADA DISABILITY DISCRIMINATION — FAILURE TO ACCOMMODATE (CULLEN)

42 U.S.C. § 12112(b)(5)(A)

Against Defendants Lakeland Cemetery Services, Inc. and Everstory Partners, LLC

132. Plaintiff Cullen incorporates paragraphs 1-4, 6-8, 10, 12, 14-17, 21, 33-39, 63-64, 77-78, 80-81.

133. Cullen has Stage 3 Hurley hidradenitis suppurativa, a chronic, debilitating condition that substantially limits major life activities including walking, standing, sitting, and working. He is an "individual with a disability" within the meaning of 42 U.S.C. § 12102(1).

134. With reasonable accommodations—specifically, consistent access to his prescribed biologic medication (Humira) and paid medical leave during severe flares—Cullen could perform the essential functions of the Crew Leader position.

135. Lakeland sponsored the Plan, which provided prescription drug coverage. Cullen enrolled in the Plan and was entitled to coverage for Humira, a medically necessary medication covered under the Plan's formulary.

136. Plan enrollment data contained an incorrect date of birth for Cullen. This error prevented him from accessing his online account with the Plan's pharmacy benefit manager and from managing his prescription refills.

137. Despite repeated requests from Plaintiffs, Lakeland did not correct the date-of-birth error.

138. In July 2023, due to inability to access his prescription drug account, Cullen missed multiple weekly Humira injections.

139. As a direct and proximate result of the missed doses, Cullen experienced a severe Stage 3 flare requiring complete bedrest and rendering him temporarily totally disabled.

140. Plaintiffs requested paid medical leave so that Mandeville could provide necessary care during this acute episode. Lakeland denied paid medical leave and required Plaintiffs to exhaust vacation time.

141. Lakeland's refusal to correct the Plan data error, combined with denial of paid medical leave, constituted failure to provide reasonable accommodation. See Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1262-63 (11th Cir. 2007) (employer must provide reasonable accommodation enabling employee to perform essential functions).

142. During the same period, Lakeland provided paid-leave-equivalent "bonus" payments to male part-time employee Gaddison during his surgery leave. This disparate treatment demonstrates that providing paid medical leave did not constitute an undue hardship.

143. Everstory exercised control over work scheduling and site access in ways that affected Cullen's ability to manage his condition. The transfer to Forest Lawn Gardens with reduced hours and prohibition on Saturday work reduced Cullen's earning capacity and work schedule flexibility.

144. Lakeland and Everstory are joint employers jointly and severally liable for failure to accommodate.

145. As a direct and proximate result of Defendants' failure to accommodate, Cullen suffered a severe July 2023 disease flare, incurred emergency medical expenses,

experienced ongoing disease progression due to inconsistent medication access, and ultimately lost his employment.

**WHEREFORE, Plaintiffs request:**

a.  A declaratory judgment that Lakeland and Everstory violated 42 U.S.C. § 12112(b)(5)(A);

b.  Back pay from November 1, 2024 through the date of judgment;

c.  Front pay in lieu of reinstatement (Cullen does not seek reinstatement);

d.  Compensatory damages for medical expenses, pain and suffering, and emotional distress;

e.  Injunctive and declaratory relief; and

f.  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12117(a) if counsel is later retained.

## COUNT VII: TITLE VII SEX DISCRIMINATION

42 U.S.C. § 2000e-2(a)

Against Defendant Lakeland Cemetery Services, Inc.

146. Plaintiffs incorporate paragraphs 1-4, 5-8, 10-12, 14-15, 18-21, 36-39, 50-52, 61, 63-64, 74-82.

147. Cullen and Mandeville are members of a protected class based on sex within the meaning of Title VII.

148. Lakeland subjected Plaintiffs to less favorable terms and conditions of employment compared to similarly situated employees of the opposite sex.

149. Cullen – Compensation Discrimination: Lakeland paid Cullen, a male Crew Leader with full-time status and 14 years of seniority, an hourly wage of approximately $19.00. During the same period, Lakeland paid male part-time employee Justin Gaddison an hourly wage exceeding $19.00, despite Gaddison's lack of supervisory responsibilities and part-time status. This wage disparity cannot be explained by skill, effort, responsibility, seniority, or any legitimate factor other than sex. Mandeville's hourly wage of $18.00 reflects a $1.00/hour disparity compared to Cullen's Crew Leader rate, which becomes discriminatory when Cullen earns less than part-time employee Gaddison despite greater responsibilities and seniority, and when Mandeville performs substantially equal work to Cullen in practice but is denied the Crew Leader title and corresponding wage despite comparable tenure and capability.

150. Cullen – Leave Discrimination: In July 2023, Lakeland denied Cullen's request for paid medical leave during a severe disability-related flare and required him to exhaust vacation time. During the same period, Lakeland provided Gaddison with "bonus" payments while Gaddison was absent for elective surgery. These bonus payments functionally served as paid leave. The disparate treatment of Cullen's medically necessary leave versus Gaddison's elective surgery leave cannot be explained by any legitimate, non-discriminatory reason.

151. Mandeville – Terms and Conditions Discrimination: Everstory imposed a time restriction at the Crestwood worksite that applied only to Plaintiffs' location. This restriction directly conflicted with Mandeville's reasonable accommodation for Lupus. Upon information and belief, Everstory did not impose comparable time

restrictions on male employees' accommodations at other locations. The restriction was implemented and maintained by male managers in a manner that disproportionately burdened Mandeville.

152. The evidence of discriminatory intent includes: (a) Crowe's August 8, 2024 statement to Mandeville that "I don't care about your lawsuit"; (b) The pattern of more favorable treatment for male employee Gaddison compared to Cullen; (c) The implementation of restrictions targeting Plaintiffs' location immediately after they raised civil rights concerns; and (d) The refusal to engage in meaningful interactive process regarding Mandeville's accommodation while providing accommodating treatment to male comparators.

153. Lakeland is an employer within the meaning of 42 U.S.C. § 2000e(b), employing more than 15 employees for the required statutory period.

154. Mandeville timely filed EEOC Charge No. 420-2023-02996 on October 27, 2023. The EEOC issued a Notice of Right to Sue. This action is timely filed within 90 days of receipt of the Right to Sue Notice.

155. As a direct and proximate result of Lakeland's sex discrimination, Plaintiffs suffered loss of income, loss of benefits, emotional distress, and reputational harm.

**WHEREFORE, Plaintiffs request:**

a.    A declaratory judgment that Lakeland violated 42 U.S.C. § 2000e-2(a);

b.    Back pay from November 1, 2024 through the date of judgment;

c.    For Plaintiff Cullen: front pay in lieu of reinstatement;

d.   For Plaintiff Mandeville: conditional reinstatement as specified in Count IV, or front pay in the alternative;

e.   Compensatory damages for non-economic losses pursuant to 42 U.S.C. § 1981a(b)(3);

f.   Injunctive relief; and

g.   Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k) if counsel is later retained.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.   Assume jurisdiction over this matter;

2.   Issue declaratory judgments that Defendants violated the statutes alleged in each Count;

3.   Award Plaintiffs back pay, including wages and the full replacement cost of health insurance and other benefits, from the dates of each adverse action through the date of judgment, with prejudgment interest;

4.   For Plaintiff Mandeville: Order conditional reinstatement to a supervisory, compliance, or advisory position with Lakeland and/or Everstory, subject to negotiation of a detailed employment agreement containing: specification of accommodation terms; defined reporting relationships; termination-only-for-cause provisions; non-retaliation protections; and appropriate monitoring mechanisms; OR, in the alternative, award front pay;

5.   For Plaintiff Cullen: Award front pay in lieu of reinstatement;

6.  Award compensatory damages for economic losses including medical expenses, cost of replacement insurance, and debt incurred due to loss of income;

7.  Award compensatory damages for non-economic losses including physical pain, emotional distress, reputational harm, loss of educational opportunities, and disruption of personal relationships, calculated via the per diem methodology set forth herein in the amount of approximately $239,200.00 per Plaintiff;

8.  Award statutory penalties under 29 U.S.C. § 1132(c)(1) for violation of ERISA document furnishing requirements;

9.  Award liquidated damages under 29 U.S.C. § 216(b) (incorporated by 29 U.S.C. § 218c(d)) for ACA whistleblower retaliation;

10. Issue permanent injunctive relief:

• Requiring Defendants to implement compliant ADA interactive process procedures;

• Requiring Defendants to correct Plan enrollment data and provide complete Plan documents;

• Prohibiting Defendants from relying on the disputed termination allegations in providing employment references or in future dealings with Plaintiffs; and

• Requiring such other prospective equitable relief as is necessary to prevent recurrence of the violations established herein;

11. Award prejudgment and postjudgment interest at the applicable federal rate;

12. Award taxable costs; and

13. If Plaintiffs later retain counsel, award reasonable attorneys' fees pursuant to 29 U.S.C. § 218c(d), 29 U.S.C. § 1132(g)(1), 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(k)), and 42 U.S.C. § 2000e-5(k);

14. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims and issues so triable.

Respectfully submitted this _____ day of February, 2026.

/s/ Chelsea K. Mandeville

CHELSEA K. MANDEVILLE

Pro Se

400 W. Blue Mountain Road

Anniston, Alabama 36201

Telephone: (256) 770-6253

Email: ckayem@yahoo.com

/s/ Patrick K. Cullen

PATRICK K. CULLEN

Pro Se

400 W. Blue Mountain Road

Anniston, Alabama 36201

Telephone: (256) 589-2167

Email: Phathacked@proton.me

**CERTIFICATE OF SERVICE**

I hereby certify that on this _____ day of February, 2026, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send notification of such filing

to all counsel of record.

/s/ Chelsea K. Mandeville

Chelsea K. Mandeville

**EXHIBITS ATTACHED**

**Exhibit A:** Amended Consolidated Complaint

**Exhibit B:** Notice of Right to Sue (Cullen)

**Exhibit C:** Notice of Right to Sue (Mandeville)

**Exhibit D:** Order from Judge Bell regarding Notice of Kickout

Exhibit B:

Patrick K. Cullen

notice of right to sue

from the EEOC



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Birmingham District Office**

Ridge Park Place
1130 22ⁿᵈ Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 651-7020
FAX (205) 212-2105
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: June 25, 2025

**To:** Mr. Patrick K. Cullen
400 West Blue Mountain Road
Anniston, AL 36201

Charge No: 420-2025-00189

EEOC Representative and email:    CORTICE MILES
Federal Investigator
cortice.miles@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 420-2025-00189.

On behalf of the Commission,

**SHERI GUENSTER** Digitally signed by SHERI GUENSTER
Date: 2025.06.25 14:57:16 -05'00'

/for Bradley A. Anderson
District Director

**Cc:**
Megan Huizinga
413 Broad Street
Gadsden, AL 35901

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## Information Related to Filing Suit
## Under the Laws Enforced by the EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### Important Time Limits – 90 Days to file a Lawsuit

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### Attorney Representation

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### How to Request Your Charge File and 90-Day Time Limit for Requests

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 420-2025-00189 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Bradley A. Anderson, 1130 22nd Street South Suite 2000, Birmingham, AL 35205.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 420-2025-00189 to the District Director at Bradley A. Anderson, 1130 22nd Street South Suite 2000, Birmingham, AL 35205.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (01/22)

**are not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

## "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Birmingham District Office

Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 651-7020
FAX (205) 212-2105
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: June 25, 2025

**To:** Mr. Patrick K. Cullen
400 West Blue Mountain Road
Anniston, AL 36201

Charge No: 420-2025-01381

EEOC Representative and email:     CORTICE MILES
Federal Investigator
cortice.miles@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 420-2025-01381.

On behalf of the Commission,

**SHERI GUENSTER** Digitally signed by SHERI GUENSTER
Date: 2025.06.25 15:03:02 -05'00'

/for Bradley A. Anderson
District Director

**Cc:**
Scott Ahrendt
Everstory Partners
955 Keller Road Suite 1500
Altamonte Springs, FL 32714

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 420-2025-01381 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Bradley A. Anderson, 1130 22nd Street South Suite 2000, Birmingham, AL 35205.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 420-2025-01381 to the District Director at Bradley A. Anderson, 1130 22nd Street South Suite 2000, Birmingham, AL 35205.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (01/22)

are **not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

## "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

Exhibit C:

Chelsea Manderilles EEOC charges and notice of right to sue letters from the EEOC

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 420-2024-00640 |
| | | and EEOC |

State or local Agency, if any

| 1 Name (indicate Mr., Ms., Mrs., Miss, Mr., Dr., Hon., Rev.) | Home Phone | Year of Birth |
|---|---|---|
| Mrs. Chelsea K. Mandeville | 256-525-5932 | 1996 |

Street Address

400 W Blue Mountain Rd

ANNISTON, AL 36201

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Lakeland Cemetery Services | 15 - 100 Employees | (920) 336-1801 |

Street Address

1195 FLIGHTWAY DR

DE PERE, WI 54115

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest         Latest |
| Disability, Equal Pay, Retaliation | 11-01-2023     04/22/2024 |
| | Continuing Action |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a member of a protected group (sex: Female), (Disabled), and I was engaged in protected activity. I was hired by the abovenamed employer in June 2021 as a Mower and Landscaper. I could perform the essential functions of my job, with or without accommodations. My direct supervisor is Patrick Cullen (Caucasian male), Crew Leader. Jeffrey Simpson (Caucasian male) is my Regional Supervisor. Craig Haupt (Caucasian male) is the Chief Executive Officer.

On October 27, 2023, I filed a charge of discrimination with the EEOC against my employer. I also received my biweekly pay the same day. On or about November 9, 2023, Haupt withdrew my previously deposited biweekly pay, and attempted to withdraw my biweekly pay due to be deposited. Haupt had no reason to conduct such actions. These transactions caused my checking account to show a negative balance and occurred over a holiday weekend. In December 2023, Haupt refused my request to use approximately five days of paid medical leave for me and my husband's

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Mrs. Chelsea K. Mandeville**<br>04/29/2024<br><br>Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | EEOC | 420-2024-00640 |
| | | and EEOC |

*State or local Agency, if any*

disabilities. In contrast, Justin Gaddison (male coworker) was approved for approximately one month of paid medical leave due to his disability. I believe Haupt's actions were done to harass me and cause me financial distress due to my charge against them with the EEOC.

I believe I have been retaliated against for participating in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended, and the Equal Pay Act of 1963, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Mrs. Chelsea K. Mandeville**<br><br>04/29/2024<br><br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | EEOC | 420-2023-02956 |
| | | and EEOC |

*State or local Agency, if any*

| 1 Name (indicate Mr., Ms., Mrs., Miss, Mr., Dr., Hon., Rev.) | Home Phone | Year of Birth |
|---|---|---|
| Mrs. Chelsea K. Mandeville | 256-525-5932 | |

| Street Address |
|---|
| 400 W Blue Mountain Rd |
| ANNISTON, AL 36201 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Lakeland Cemetery Services | 15 - 100 Employees | |

| Street Address |
|---|
| 1195 FLIGHTWAY DR |
| DE PERE, WI 54115 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest: 03/20/2023    Latest: 10/26/2023 |
| Disability, Equal Pay, Sex | |
| | Continuing Action |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a member of a protected group (sex: Female) and (Disabled). I was hired by the abovenamed employer in June 2021 as a Mower and Landscaper. My direct supervisor is Patrick Cullen, Crew Leader.

I am the only female hired by my employer for this position since 2021. I was hired to work a 32-hour work week. My male comparators were hired to work a full 40-hour work week. I was advised by Jeffery Simpson, Regional Supervisor, that my lesser hours were to see if I could handle the requirements of the job. My male comparators were not subjected to this term and condition.

In March 2023, I engaged in a protected activity when I disclosed my disability to Simpson and Craig Haupt, CEO. I requested to enroll in employer provided healthcare and was delayed in doing so by my employer. My employer did provide coverage; however, made the coverage too expensive

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Mrs. Chelsea K. Mandeville**<br>**10/27/2023**<br><br>*Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 420-2023-02956 |
| | | and EEOC |

_State or local Agency, if any_

for me to maintain. I further engaged in a protected activity in September 2023. I addressed my concerns to my employer about disciplinary actions taken against me, and not against my male comparators for similar issues.

I believe I have been discriminated against because of my protected group (sex: Female) and (Disabled), and retaliated against for participating in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended, and the Equal Pay Act of 1963, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Mrs. Chelsea K. Mandeville**<br><br>10/27/2023<br><br><br>Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 420-2024-00640 |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.) | Home Phone | Year of Birth |
|---|---|---|
| Mrs. Chelsea K. Mandeville | 256-525-5932 | 1996 |

Street Address

400 W Blue Mountain Rd

ANNISTON, AL 36201

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Lakeland Cemetery Services | 15 - 100 Employees | (920) 336-1801 |

Street Address

1195 FLIGHTWAY DR

DE PERE, WI 54115

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address      City, State and ZIP Code

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest      Latest |
| Disability, Equal Pay, Retaliation | 11/01/2023      04/22/2024 |
| | Continuing Action |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a member of a protected group (sex: Female), (Disabled), and I was engaged in protected activity. I was hired by the abovenamed employer in June 2021 as a Mower and Landscaper. I could perform the essential functions of my job, with or without accommodations. My direct supervisor is Patrick Cullen (Caucasian male), Crew Leader. Jeffrey Simpson (Caucasian male) is my Regional Supervisor. Craig Haupt (Caucasian male) is the Chief Executive Officer.

On October 27, 2023, I filed a charge of discrimination with the EEOC against my employer. I also received my biweekly pay the same day. On or about November 9, 2023, Haupt withdrew my previously deposited biweekly pay, and attempted to withdraw my biweekly pay due to be deposited. Haupt had no reason to conduct such actions. These transactions caused my checking account to show a negative balance and occurred over a holiday weekend. In December 2023, Haupt refused my request to use approximately five days of paid medical leave for me and my husband's

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| **Digitally Signed By: Mrs. Chelsea K. Mandeville** | SIGNATURE OF COMPLAINANT |
| 04/29/2024 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Charging Party Signature | |

Page 1 of 3

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | EEOC | 420-2024-00640 |

|  |  | and EEOC |
|---|---|---|
| | *State or local Agency, if any* | |

disabilities. In contrast, Justin Gaddison (male coworker) was approved for approximately one month of paid medical leave due to his disability. I believe Haupt's actions were done to harass me and cause me financial distress due to my charge against them with the EEOC.

I believe I have been retaliated against for participating in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended, and the Equal Pay Act of 1963, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Mrs. Chelsea K. Mandeville** | |
| 04/29/2024 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| *Charging Party Signature* | |



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Birmingham District Office

Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 651-7020
FAX (205) 212-2105
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: June 25, 2025

To: Mrs. Chelsea K. Mandeville
400 W Blue Mountain Road
Anniston, AL 36201

Charge No: 420-2025-00032

EEOC Representative and email:    CORTICE MILES
Federal Investigator
cortice.miles@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 420-2025-00032.

On behalf of the Commission,

**SHERI GUENSTER** Digitally signed by SHERI GUENSTER
Date: 2025.06.25 11:52:33 -05'00'

/for Bradley A. Anderson
District Director

Cc:
Scott Ahrendt
Everstory Partners
955 Keller Road Suite 1500
Altamonte Springs, FL 32714


Please retain this notice for your records.

Exhibit D:

Order from Hon. Judge Bell from OALJ dismissing OALJ case nos:

a) 2024-ACA-00001
b) 2024-IACA-00002

in relation to OSHA case nos:

a) 301024564
b) 301024228

and finding that filing in District Court is made under the same allegations.

# UNITED STATES DEPARTMENT OF LABOR
## OFFICE OF ADMINISTRATIVE LAW JUDGES
### CINCINNATI, OHIO
### (513) 684-3252
### oalj-cincinnati@dol.gov

_____

**Issue Date: 10 April 2025**

**OALJ Case Nos:   2024-ACA-00001**
**2024-ACA-00002**

**OSHA Case Nos.:   301024564**
**301024228**

In the Matters of:

**PATRICK K. CULLEN,** and
**CHELSEA K. MANDEVILLE**
Complainants,

v.

**LAKELAND CEMETERY SERVICES, INC. et al.,**
Respondents.

## ORDER OF DISMISSAL

These consolidated whistleblower retaliation matters arise under the employee protection provisions of the Patient Protection and Affordable Care Act ("ACA"), 29 U.S.C. § 218c, and the implementing regulations found at 29 C.F.R. Part 1984. Section 1558 of the ACA, 29 U.S.C. § 218c, provides whistleblower protection for employees who have engaged in certain activities protected under the Act.

On April 7, 2025, Complainants jointly filed a "Notice of Election to File in Federal District Court." I have determined that on April 9, 2025, Complainants filed Case 1:25-cv-0523-CLM, captioned _Patrick Cullen and Chelsea Mandeville v. Lakeland Cemetery Services, Inc._ in the United States District Court for the Northern District of Alabama. I have reviewed the file-stamped complaint filed in that case. I have reviewed the "Statement of Claims for Plaintiffs" which appears on page 12 of Complainants' filing in the Northern District of Alabama, and I **FIND** that Complainants are asserting in the Northern District of Alabama case the same ACA whistleblower allegations first made in the case now pending before me.

The "kick out" procedure for ACA whistleblower proceedings is found in 15 U.S.C. § 2087(b)(4). That statute provides:

If the Secretary has not issued a final decision within 210 days after the filing of the complaint, or within 90 days after receiving a written determination, the complainant may bring an action at law or equity for *de novo* review in the appropriate district court of the United States with jurisdiction, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury.

The applicable regulations describe the same "kick out" process:

### 29 C.F.R. § 1984.114 District court jurisdiction of retaliation complaints.

(a) The complainant may bring an action at law or equity for de novo review in the appropriate district court of the United States, which will have jurisdiction over such an action without regard to the amount in controversy, either:

(1) Within 90 days after receiving a written determination under § 1984.105(a) provided that there has been no final decision of the Secretary; or

(2) If there has been no final decision of the Secretary within 210 days of the filing of the complaint.

I **FIND** that Complainants initiated their action with the United States Department of Labor no later than April 8, 2024, which is more than 210 days prior to their filing of the Complaint in the United States District Court for the Northern District of Alabama. I further **FIND** that the Secretary of Labor has made no final decision on the Complainants' cases now pending before me.

### IT IS HEREBY ORDERED:

Pursuant to 15 U.S.C. § 2087(b)(4) and 29 C.F.R. § 1984.114, Office of Administrative Law Judges Cases 2024-ACA-00001, captioned *Patrick K. Cullen v. Lakeland Cemetery Service* and 2024-ACA-00002, captioned *Chelsea Mandeville v. Lakeland Cemetery Service* are hereby **DISMISSED.**

Steven D. Bell
Administrative Law Judge

- 2 -

## NOTICE OF APPEAL RIGHTS:

To appeal, you must file a Petition for Review ("Petition") with the Administrative Review Board ("Board") within fourteen (14) days of the date of the administrative law judge's decision.

Your Petition is considered filed on the date of its postmark, facsimile transmittal, or e-filing; but if you file it in person, by hand-delivery or other means, it is filed when the Board receives it. See 29 C.F.R. § 1984.110(a). Your Petition must specifically identify the findings, conclusions or orders to which you object. You may be found to have waived any objections you do not raise specifically. See 29 C.F.R. § 1984.110(a).

At the time you file the Petition with the Board, you must serve it on all parties as well as the Chief Administrative Law Judge. You must also serve the Assistant Secretary, Occupational Safety and Health Administration and on the Associate Solicitor, Division of Fair Labor Standards. See 29 C.F.R. § 1984.110(a).

If no Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 29 C.F.R. §§ 1984.109(e) and 1984.110(b). Even if a Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor unless the Board issues an order within thirty (30) days of the date the Petition is filed notifying the parties that it has accepted the case for review. See 29 C.F.R. § 1984.110(b).

### Filing and Service of an appeal

1. **Use of EFS System:** The Board's Electronic Filing and Service (EFS) system allows parties to initiate appeals electronically, file briefs and motions electronically, receive electronic service of Board issuances and documents filed by other parties, and check the status of appeals via an Internet-accessible interface. Use of the EFS system is free of charge to all users. To file an appeal using the EFS System go to https://efile.dol.gov. All filers are required to comply with the Board's rules of practice and procedure found in 29 C.F.R. Part 26, which can be accessed at https://www.ecfr.gov/current/title-29/subtitle-A/part-26.

A. **Attorneys and Lay Representatives:** Use of the EFS system is **mandatory for all attorneys and lay representatives** for all filings and all service related to cases filed with the Board, absent an exemption granted in advance for good cause shown. 29 C.F.R. § 26.3(a)(1), (2).

- 3 -

**B. Self-Represented Parties: Use of the EFS system is strongly encouraged for all self-represented parties** with respect to all filings with the Board and service upon all other parties. Using the EFS system provides the benefit of built-in service on all other parties to the case. Without the use of EFS, a party is required to not only file its documents with the Board but also to serve copies of all filings on every other party. Using the EFS system saves litigants the time and expense of the required service step in the process, as the system completes all required service automatically. Upon a party's proper use of the EFS system, no duplicate paper or fax filings are required.

**Self-represented parties who choose not to use the EFS system must file by mail or by personal or commercial delivery** all pleadings, including briefs, appendices, motions, and other supporting documentation, directed to:

Administrative Review Board
Clerk of the Appellate Boards
U.S. Department of Labor
200 Constitution Avenue, N.W., Room S-5220,
Washington, D.C., 20210

### 2. EFS Registration and Duty to Designate E-mail Address for Service

To use the Board's EFS system, a party must have a validated user account. To create a validated EFS user account, a party must register and designate a valid e-mail address by going to https://efile.dol.gov, select the button to "Create Account," and proceed through the registration process. If the party already has an account, they may simply use the option to "Sign In."

Once a valid EFS account and profile has been created, the party may file a petition for review through the EFS system by selecting "eFile & eService with the Administrative Review Board" from the main dashboard, and selecting the button "File a New Appeal - ARB." In order for any other party (other than the EFS user who filed the appeal) to access the appeal, the party must submit an access request. To submit an access request, parties must log into the EFS System, select "eFile & eService with the Administrative Review Board," select the button "Request Access to Appeals," search for and select the appeal the party is requesting access to, answer the questions as prompted, and click the button "Submit to DOL."

Additional information regarding registration for access to and use of the EFS system, including for parties responding to a filed appeal, as well as step-by-step User Guides, answers to frequently asked questions (FAQs), video tutorials and contact information for login.gov and EFS support can be found under the "Support" tab at https://efile.dol.gov.

- 4 -

### 3. Effective Time of Filings

Any electronic filing transmitted to the Board through the EFS e-File system or via an authorized designated e-Mail address by 11:59:59 Eastern Time shall be deemed to be filed on the date of transmission.

### 4. Service of Filings

### A. Service by Parties

- **Service on Registered EFS Users:** Service upon registered EFS users is accomplished automatically by the EFS system.

- **Service on Other Parties or Participants:** Service upon a party that is not a registered EFS user must be accomplished through any other method of service authorized under applicable rule or law.

### B. Service by the Board

Registered e-filers will be e-served with Board-issued documents via EFS; they will not be served by regular mail (unless otherwise required by law). If a party unrepresented by counsel files their appeal by regular mail, that party will be served with Board-issued documents by regular mail. Any party may opt into e-service at any time by registering for an EFS account as directed above, even if they initially filed their appeal by regular mail or delivery.

### 5. Proof of Service

Every party is required to prepare and file a certificate of service with all filings. The certificate of service must identify what was served, upon whom, and manner of service. Although electronic filing of any document through the EFS system will constitute service of that document on all EFS-registered parties, electronic filing of a certificate of service through the EFS system is still required. **Non EFS-registered parties must be served using other means authorized by law or rule.**

### 6. Inquiries and Correspondence

For efiling assistance, inquiries must be made while logged into the system by using the eFile and eServe Help Request Form at https://efile.dol.gov/contact. All other inquiries and correspondence related to filings should be directed to the Office of the Clerk of the Appellate Boards by email to ARB-Correspondence@dol.gov or by fax at 202-513-6832. Other inquiries or questions may be directed to the Board by telephone at 202-693-6200.



Chelsea Mandeville
and
Patrick Cullen
400 W. Blue Mountain Rd
Anniston, Al
36202

Clerk of Court
Hugo L. Black United States
Federal Courthouse; Northern
District of Alabama, Eastern Div.
1729 5th Avenue N.
Birmingham, Al 35203